**CITY OF CARROLLTON et al., Appellants,**

v.

**Rodney KEELING, Appellee.**

**No. 19400.**

Court of Civil Appeals of Texas, Dallas.

Dec. 12, 1977.

Rehearing Denied Jan. 12, 1978.

H. Louis Nichols, Saner, Jack, Sallinger & Nichols, Dallas, for appellants.

Edward B. Cloutman, III, Mullinax, Wells, Mauzy & Baab, Inc., Dallas, for appellee.

GUITTARD, Chief Justice.

This suit was brought by a member of the fire department of the City of Carrollton under § 18 of article 1269m, Texas Revised Civil Statutes Annotated (Vernon 1963), to set aside a decision of the Civil Service Commission demoting him from the rank of lieutenant to that of private. The trial court set aside the order and restored plaintiff to his former rank. We reverse on the ground that there was substantial evidence before the court to sustain the decision of the commission.

The authority of the commission to demote a fireman or other officer is found in § 19 of article 1269m, which provides that whenever the head of the fire department desires to demote an officer, he may make a recommendation in writing to the Civil Service Commission, giving the reasons, and if the commission feels that there is probable cause for demotion, it shall give the right to a public hearing, and shall not demote the officer without such a hearing.

■ The statute does not state explicitly the ground on which an officer may be demoted, but evidently the legislative intent is that the commission should first determine whether the chief's recommendation states "probable cause" for the recommended demotion, and if the commission determines that "probable cause" is stated, then it must hear the evidence and by implication may demote the officer if it decides that the evidence supports the chief's statement of probable cause.

■ The officer's right to review to the commission's decision is provided by § 18 of article 1269m. This section provides that the case shall be "tried de novo." The standard of review, however, is whether the commission's order is "reasonably supported by substantial evidence," and the burden is on the officer to satisfy the court that the order is not reasonably supported by substantial evidence. *Board of Firemen's Relief and Retirement Fund Trustees v. Marks*, 150 Tex. 433, 242 S.W.2d 181, 183 (1951). The question of whether the decision should be set aside is determined by evidence before the court. *Hynes v. City of Houston*, 263 S.W.2d 839, 841 (Tex.Civ.App. —Galveston, 1954, writ ref'd n.r.e.). The existence of substantial evidence to support the commission's order must be determined from the entire record as made in the trial court. *Allen v. Herrera*, 257 S.W.2d 753, 755 (Tex.Civ.App.—San Antonio, 1953, no writ). Nevertheless, the question is regarded as one of law, and any conflict in the evidence must be resolved in favor of the commission's decision.

By these standards we must hold that there is substantial evidence in the record before us to support the commission's decision. Plaintiff Rodney Keeling had been a lieutenant in the fire department for more than three years. He was on duty at night, when a telephone call came from a citizen about an animal in the wall of her house. Next day the caller complained of Keeling's failure to respond to her call. After investigation, Fire Chief F. J. Douglas made a written recommendation to the Civil Service Commission that Keeling be demoted to the rank of private, citing violation of certain rules of the Civil Service Commission governing the fire department. The

charge on which the recommendation was based was stated as follows:

"[O]ne of our fireman, an officer, Lieutenant Rodney Keeling, lightly disregarded a distress call of one of our citizens. The request for aid was rudely dismissed, and no action was taken by the Carrollton Fire Department. Indeed, the caller was implicitly ridiculed for even having the idea that the fire department should be dispatched to her residence."

We have examined the statement of facts to determine whether this charge is supported by the evidence presented to the trial court. The complainant, Patsy Howard, testified that she called the fire department about eleven o'clock at night, saying that there was no emergency, but that there was an animal flopping around in her wall and she thought it was a bird. She testified that the person who answered the call, later identified as Keeling, told her that the old fire department might have answered calls like getting cats out of trees, but that the new Carrollton Fire Department did not, and he added that he did not know where anybody got the idea to call the fire department about such things. She considered his response rude and sarcastic. She told him that she had called at the suggestion of her brother, a member of the Addison Fire Department, and Keeling's response was that the Addison firemen were "just trying to harass." Because of this conduct she was in tears when she hung up the telephone and "felt like an idiot." She called her brother, who contacted a friend who was an animal control officer for the neighboring city of Addison. He came out and removed the animal.

Keeling's testimony does not materially dispute Miss Howard's account of this conversation. He was second in command on the occasion in question and was sleeping by the telephone. He testified that he told Miss Howard that if the animal was a bird, it would probably find its way out, and that although the old fire department used to make animal calls, they had since stopped doing it. He said he told her that the only thing that she might be able to do is to call

animal control, but that he did not know whether she could get anyone at that time of night. He admitted that he told her that the Addison firemen were trying to harass him, and he might have said that he did not understand why people thought the fire department made such calls.

Keeling's explanation of his response is that he was attempting to follow what he believed to be the operating procedures of the fire department. He testified that some time before this incident, Chief Douglas had talked to him and his captain and had told him that since the city had an animal control officer, the fire department would no longer respond to animal calls.

Miss Howard's brother, Randall Howard, a member of the Addison Fire Department, testified that he received a telephone call from his sister on the night in question about something in her wall and he told her to call the Carrollton Fire Department. She later called him back and was quite upset because she said they were rude and she could not get them to come out and help her. He then called a friend, who was the animal control warden of Addison, who went over and took care of the problem. Next morning Howard called Chief Douglas and inquired why someone was not sent to investigate his sister's call. He testified that Douglas told him that they no longer made such calls because they had an animal control warden, but they had failed to take into consideration that some of these calls might come in at night, although he felt someone should have gone. Howard testified that Douglas said he believed that there was a breakdown of communication between him and his men and that he was sorry that it had happened.

Jerry Cotton, a paramedic employed by the Carrollton Fire Department, and president of the firemen's association, corroborated Randall Howard's account of his conversation with Chief Douglas. He testified that he was present when the chief received the telephone call and heard him say that the department's policy had been changed in relation to an animal control officer, that apparently there was a breakdown in com-

munications, and that the men did not understand the hours when a control officer was on duty and when they might have to make some calls.

Chief Douglas testified that there had been no change in the policy of the fire department to respond to animal distress calls, but there was a change in operations in that instead of climbing the trees and getting the cats out, they would call the animal control man and let him do it. Douglas insisted, however, that he never said that the department should not respond. He further testified that there was no written operating procedure pertaining to animal distress calls. He said that they never know what a call is, that it may turn out to be an animal or it may be a fire. In this case, the caller had a problem and it was the department's duty to respond. The rules of the department, he said, required an investigation under such circumstances.

Chief Douglas further testified that in his opinion anyone who received such a call should have dispatched an engine to investigate because the lady was in trouble and was not definitely sure what her trouble was. It could have been a house afire or could have been an attic burning and shingles falling down. Although Miss Howard thought it was a bird and it turned out to be a rat, it could have been a fire. Douglas further stated that Keeling's action was in direct violation of the fire department's rules and could lead to insubordination, since he had written instructions to dispatch an engine to any call for assistance. Although no such rules are in evidence, we must presume in support of the commission's order that their provisions were as Chief Douglas stated. The chief had recommended to the Civil Service Commission that Keeling should be demoted from his position of authority because he had failed to exercise his authority properly, and it was his conclusion, based on his investigation, that reduction to the grade of fireman was appropriate for the actions of Lieutenant Keeling on the night in question.

After the chief received the call from Randall Howard, he notified Keeling of the complaint. According to Keeling's testimony, he then telephoned Miss Howard and apologized for any misunderstanding, saying that he was acting on what he had been told. Miss Howard's testimony confirms this call and the apology, and she said that as far as she was concerned the matter was over. She also testified that she had a telephone call from Chief Douglas, who told her that there was a misunderstanding because there was an animal control warden and they had not thought about these calls coming up at night. She did not ask Chief Douglas to pursue any further remedies against Keeling, and she thought that the main thing was that other people might be talked to in that way or be made to feel as she had felt.

■ The civil service rules specified in Chief Douglas's recommendation were not offered in evidence at the trial, but since the burden of proof was on the officer, we must presume that these rules provided for demotion as a disciplinary measure for the two charges specified in the recommendation, namely, Keeling's failure to take appropriate action in response to Miss Howard's call and his discourtesy in responding to her call. In this connection we note that § 5 of article 1269m authorizes the Civil Service Commission to prescribe rules for removal or suspension of firemen and includes among the grounds that may be specified in such rules "neglect of duty; discourtesy by said employee to the public . . . while said employee is in line of duty" and "violation of any of the rules and regulations of the Fire Department . . . or of special orders, as applicable."

■ With respect to Keeling's failure to take action, there is a dispute in the evidence concerning his excuse that he was following the department's policy as he understood it. His testimony is to some extent corroborated by the chief's statement to Randall Howard the next day indicating that there may have been some misunderstanding among the men as to what action should be taken in response to animal distress calls when the animal control officer was not available to respond. Yet the chief

testified that there was a positive written rule requiring all distress calls to be investigated and this rule required that an investigation be made in this case, since the cause of the problem was not definitely determined and it could have been a fire. This testimony tends to support the commission's findings that Keeling did not make a proper response to the call. Further support for the commission's decision is provided by the testimony of Keeling and Miss Howard concerning their telephone conversation. Even if Keeling had understood that the fire department's policy was not to respond to animal distress calls, a reasonable inference may be drawn that he was guilty of discourtesy. Since he admitted that the department had formerly made such calls, he had no reason to tell her that he did not understand why she thought she should call the fire department, or that her call was a matter of harassment instigated by the Addison firemen. This testimony, together with Miss Howard's statement that Keeling was rude and sarcastic and made her "feel like an idiot," supports the conclusion that his discourtesy was sufficiently serious to justify disciplinary action. Keeling's apology by telephone the next day is not necessarily to be taken as an admission of discourteous conduct, but neither does it necessarily negate the propriety of disciplinary action. Thus, we hold that plaintiff has failed to meet his burden of showing that the commission's finding of grounds for discipline was not reasonably supported by substantial evidence.

Plaintiff argues that he has discharged his burden because he has shown that the penalty imposed, a demotion of two ranks, was so severe as to justify the trial court's conclusion that the commission's decision was arbitrary and unreasonable. The disciplinary action does seem harsh to us, as it evidently did to the trial court. Nevertheless, we cannot say that it was arbitrary or unreasonable. A fire department, like a police department, must act promptly and efficiently to protect citizens and their property in situations of great danger, and, consequently, is organized along military lines. An officer of the rank of lieutenant is in a position of responsibility, since he is expected to make decisions on which the lives and safety of firemen and other citizens may depend. Consequently, the confidence of the chief and other members of the department in the supervisory efficiency and judgment of an officer may be a more important consideration than in other types of public employment. *Cf. Bolieu v. Firemen's and Policemen's Civil Service Comm'n,* 330 S.W.2d 234, 236, 237, Tex.Civ.App. (discipline required of firemen beyond that of ordinary callings). In case of a breach of discipline or other infraction of rules on the part of an officer, the head of the department has the initial responsibility to make a recommendation for disciplinary action, and the Civil Service Commission has the function of holding a hearing and determining whether the action recommended is appropriate. The propriety of a particular disciplinary measure to maintain discipline and good order and the suitability of the officer under investigation to continue to exercise supervisory functions are important matters of internal administration with which courts should not interfere in the absence of a clear showing of abuse of authority. When we view the present record in this context, we are unable to say that plaintiff has shown as a matter of law that the Commission's decision was arbitrary and capricious.

For the reasons stated, the judgment of the trial court is reversed and judgment is here rendered denying plaintiff's petition to set aside the decision of the Civil Service Commission.