Lisa Beth ROSE, Alton Rose and
Frances Rose, Appellants,

v.

DOCTORS HOSPITAL FACILITIES
d/b/a Doctors Hospital, and National
Medical Enterprises, NME Hospitals,
Inc. d/b/a Doctors Hospital, Appellees.

No. 05–86–00009–CV.

Court of Appeals of Texas,
Dallas.

Feb. 9, 1987.

Rehearing Denied May 1, 1987.

W. James Kronzer, Houston, Douglas D. Mulder, John H. Hagler, Dallas, Ronald D. Krist, Houston, for appellants.

Robert A. Gwinn, Kenneth C. Stone, Michael W. Huddleston, R. Brent Cooper, Dallas, for appellees.

Before GUITTARD, C.J., and HOWELL and SCALES[1], JJ.

1. The Honorable R.T. Scales, Justice, retired, Court of Appeals for the Fifth District of Texas at Dallas, sitting by assignment.

R.T. SCALES, Justice, retired.

Lisa Beth Rose, Alton Rose, and Frances Rose appeal from a judgment notwithstanding the verdict rendered in this claim for wrongful death pursuant to the Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Supp.1986). The jury awarded $815,000 each to Alton Rose and Frances Rose, parents of the deceased, and $2,825,000 to Lisa Rose, wife of the deceased. In an accompanying opinion, which is unpublished pursuant to rule 90 of the Texas Rules of Appellate Procedure, we hold that there is some evidence, and that the evidence is sufficient, to support the jury's verdict that the hospital caused the decedent's death. Accordingly, we reverse the judgment of the trial court and render judgment on the jury verdict, subject to suggested remittiturs by Alton Rose of $230,000, by Frances Rose of $315,000, and Lisa Rose of $500,000.

By cross-point of error, however, Doctors Hospital Facilities d/b/a Doctors Hospital, and National Medical Enterprises, NME Hospitals, Inc. d/b/a Doctors Hospital (collectively, the hospital) contend that recovery of each of the Roses should be limited in accordance with section 11.02(a) of the Texas Medical Liability and Insurance Improvement Act.[2] ("the Medical Liability Act"). The hospital alternatively contends that recovery of each of the Roses for non-pecuniary losses should be limited in accordance with section 11.03 of the Medical Liability Act.

The Roses argue that the Medical Liability Act is unconstitutional, citing *Detar Hospital, Inc. v. Estrada*, 694 S.W.2d 359 (Tex.App.—Corpus Christi 1985, no writ); *Malone & Hyde, Inc. v. Hobrecht*, 685 S.W.2d 739 (Tex.App.—San Antonio 1985, writ dism'd by agr.); and *Baptist Hospital of Southeast Texas, Inc. v. Baber*, 672 S.W.2d 296 (Tex.App.—Beaumont 1984), *writ ref'd n.r.e. per curiam*, 714 S.W.2d 310 (Tex.1986) (amount of judgment did not exceed statutory limits of liability, thus

2. TEX.REV.CIV.STAT.ANN. art. 4590i; § 1.01 et seq. (Vernon Supp.1986).

constitutionality was not reached). We hold that section 11.02(a) of the Medical Liability Act is constitutional; thus, we render judgment subject to the limits contained in the Medical Liability Act. Section 11.02(a) of the Medical Liability Act provides:

In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000.

In reviewing the constitutionality of a statute, there is a presumption of the validity of the statute. *Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 558 (Tex.1985); *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 923 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). We must presume that the legislature has not acted unreasonably or arbitrarily and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis to strike down legislation as being arbitrary or unreasonable. *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968); *Detar*, 694 S.W.2d at 365.

Courts in eight other states have addressed the constitutionality of damage limits in medical malpractice claims. The supreme courts of California, Indiana, and Nebraska have upheld such limits against constitutional attack, *Fein v. Permanente Medical Group*, 38 Cal.3d 137, 211 Cal. Rptr. 368, 695 P.2d 665 (1985) ($250,000 limit on "noneconomic" damages), *appeal dismissed*, 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985); *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585 (1980) ($500,000 limit on total recovery); *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977) ($500,000 limit on total recovery unless patient elects not to come within provisions of act), while courts in other states have held such limits unconstitutional on differing grounds. *See Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980) ($250,000 limit on "noneconomic" damages violates equal protection provision of New Hampshire constitution); *Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978) ($300,-000 limit on all damages violates equal protection clauses of state and federal constitutions); *Wright v. Central DuPage Hospital Ass'n*, 63 Ill.2d 313, 347 N.E.2d 736 (1976) ($500,000 limit on all damages is unconstitutional as a special privilege prohibited by the Illinois constitution); *Simon v. St. Elizabeth Medical Center*, 355 N.E.2d 903 (Ohio Com.Pls.1976) ($200,000 limit on "general" damages violates equal protection clauses of the state and federal constitution); *see also Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976) (in challenge of constitutionality of ceiling on "recoverable" damages based on due process and equal protection grounds, court remanded for factual determination on whether medical malpractice insurance crisis actually existed in Idaho).

In addition, three courts of appeals in Texas have addressed the constitutionality of the damage limits contained in the Medical Liability Act. In *Detar Hospital, Inc. v. Estrada*, 694 S.W.2d 359 (Tex.App.— Corpus Christi 1985, no writ), the Corpus Christi court of appeals held that sections 11.01–11.05 "are unconstitutional." *Id.* at 366. In that case, the plaintiff attacked the constitutionality of the Medical Liability Act on equal protection grounds under the state and federal constitutions. *Detar*, 694 S.W.2d at 365. The court applied the "rational basis" test set forth in *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); however, the court also discussed the presence or absence of a quid pro quo, a concept applicable to due process analysis under the federal constitution, *see Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), and applicable to analysis under the open courts provision of the Texas constitution, TEX. CONST. art. I § 13. *See Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951 (1955). In *Malone & Hyde, Inc. v. Hobrecht*, 685 S.W.2d 739 (Tex.App.—San Antonio 1985, writ dism'd by agr.), the San Antonio court of appeals held section 11.02 of the Medical Liability Act unconstitutional without specifying the grounds. Finally, in *Baptist Hospital of Southeast Texas, Inc. v. Baber*, 672 S.W.2d 296 (Tex.App.—

Beaumont 1984), *writ ref'd n.r.e., per curiam,* 714 S.W.2d 310 (Tex.1986), the Beaumont court of appeals held that section 11.02(a) of the Medical Liability Act violates equal protection. That court also discussed the presence or absence of a quid pro quo as a factor in determining constitutionality.

### DUE PROCESS [3]/OPEN COURTS DOCTRINE

The fourteenth amendment to the United States Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. Similarly, the Texas constitution provides that no citizen shall be deprived of life, liberty, property, privileges or immunities except by due course of law. TEX.CONST. art. I, § 19. In addition, the Texas constitution provides that "all courts shall be open, and every person for injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The open courts provision is a facet of due process, *Sax v. Votteler,* 648 S.W.2d 661, 663–64 (Tex. 1983); *McCulloch,* 696 S.W.2d at 923, and it insures that Texas citizens bringing common law causes of action will not unreasonably be denied the right to redress of injuries. *Hanks v. City of Port Arthur,* 121 Tex. 202, 209–16, 48 S.W.2d 944, 946–50 (1932).

The question of whether due process under the federal constitution requires an adequate quid pro quo when the legislature acts to restrict or abolish a right of recovery has been left open by the United States Supreme Court. *Fein v. Permanente Medical Group,* 474 U.S. 892, 106 S.Ct. 214, 215–16, 88 L.Ed.2d 215 (1985) (White, J., dissenting on dismissal for want of substantial federal question), *quoting Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 88, 98 S.Ct. 2620, 2638, 57 L.Ed.2d 595 (1978) ("it is not at all clear that the Due Process clause in

fact requires that a legislatively enacted scheme either duplicate the recovery at common law or provide a reasonable substitute remedy. However, we need not resolve this question here").

A state, however, in interpreting its own constitution, is free to provide additional rights for its citizens. *See, e.g., Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *Sax,* 648 S.W.2d at 664. In Texas, the supreme court has done so, adopting the requirement of a quid pro quo as part of the open courts aspect of due process. *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951 (1955). In *Lebohm,* the court stated:

> [Section 13] prohibit[s] legislative bodies from arbitrarily withdrawing all legal remedies from one having a cause of action well established and well defined at common law.... Legislative action withdrawing common law remedies ... for injuries is sustained only when it is reasonable in substituting other remedies....

*Lebohm,* 154 Tex. at 197, 275 S.W.2d at 954. Recently, the Texas supreme court reaffirmed the interpretation in *Lebohm* of article I, section 13 of the Texas constitution. *Sax,* 648 S.W.2d at 665. In *Sax,* the court held that, absent a showing that the legislative basis for the statute outweighs the constitutionally guaranteed right of redress, a common law cause of action cannot be abrogated. *Sax,* 648 S.W.2d at 666. Although a wrongful death claim such as that presented in the present case is not a common law cause of action, *see Duhart v. State,* 610 S.W.2d 740, 742 n. 2 (Tex.1980); *Taylor v. Parr,* 678 S.W.2d 527, 529 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), the Medical Liability Act applies equally to statutory and to common law causes of action, such as those for ordinary negligence. Accordingly, we will address the open courts provision as applied to the Medical Liability Act.

---

**3.** We use the term "due process" to refer both to the due process clause of the fourteenth amendment of the United States Constitution and to the due course of law clause of article I, section 19 of the Texas constitution.

Historically, legislation which places an impossible burden on a plaintiff's right to seek recovery has been held violative of the open courts provision of the Texas constitution. For example, legislation which had the effect of forcing a plaintiff to sue in a county without courts violated the open courts provision of the Texas constitution. *H. Runge & Co. v. Wyatt*, 25 Tex. (Supp.) 291, 294–95 (1860). A statute making the right of appeal contingent upon filing a supersedeas bond, without reference to the appellant's ability to pay, also violated the open courts provision, *Dillingham v. Putnam*, 109 Tex. 1, 3–5, 14 S.W. 303, 304–05 (1890), as did a city charter which exempted a city from liability for injuries caused by street defects, unless the city had written notice of the defect at least twenty-four hours prior to the injury. *Hanks v. City of Port Arthur*, 121 Tex. 202, 209–10, 48 S.W.2d 944, 946–47 (1932). Recently, the supreme court has held a statute of limitations in a medical liability claim unconstitutional where it barred suit by a minor before she reached her majority. *Sax*, 648 S.W.2d at 666–67. In addition, the court has held that statutes of limitations which bar a plaintiff's right to seek recovery for his injuries before he could have known of the injury violate the open courts provision. *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex. 1985); *Nelson v. Krusen*, 678 S.W.2d 918, 923 (Tex.1984).

In each of these cases, the court emphasized that it is the impossible condition or unreasonable burden placed on the bringing of suit which violates the open courts provision of the Texas constitution. *See Wyatt*, 25 Tex. (Supp.) at 294–95 ("the plaintiffs in the court below could have no remedy by due course of law, if there was no tribunal in which they could make their complaint"); *Dillingham*, 109 Tex. at 4, 14 S.W. at 304 ("a law which practically takes away from either party to litigation the right to a fair and impartial trial in the courts ... denies a remedy by due course of law"); *Hanks*, 121 Tex. at 211, 48 S.W.2d at 948 ("to require notice of those who knew nothing of a defective condition is to impose an unreasonable condition precedent to recovery"); *Sax*, 648 S.W.2d

at 667 ("under the facts of this case, [plaintiff] is forever barred from having her day in court"); *Krusen*, 678 S.W.2d at 923 ("the limitation period ... would require [plaintiffs] to do the impossible ... [w]e hold that [the limitations period] is unconstitutional, under the open courts provision, to the extent it purports to cut off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit"); *Neagle*, 685 S.W.2d at 12 ("the open courts provision of our Constitution protects a citizen ... from legislative acts that abridge his right to sue").

Our research, however, has revealed no cases in which the *right of access* to the courts guaranteed by section 13 has been equated with the *degree of remedy* available to the plaintiff. Limitation on a plaintiff's right to recover one hundred percent of his damages does not limit his right to seek redress for his injury. Indeed, courts have adhered to statutes limiting a plaintiff's right to recover full damages for his injury, even where the damages are inadequate to compensate the plaintiff for his loss. For example, until recently, a parent suing for the wrongful death of a minor child was limited to the pecuniary value of the child's services until he reached his majority, less the expense of the child's care, support, education, and maintenance. *Bedgood v. Madalin*, 600 S.W.2d 773, 775 (Tex.1980); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837, 843 (Tex.App.—Waco 1982, writ dism'd). Although this rule was abandoned by the supreme court in *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex.1983), the court did not cite, nor did it discuss, the open courts provision as a basis for its decision. Thus, it is apparent that the open courts aspect of due process under the Texas constitution does not prohibit a rule that prevents a plaintiff from recovering one hundred percent of his damages for an injury. It is this feature of the Medical Liability Act: limitation on the right to recover full damages versus limitation on the right to seek any recovery at all, which distinguishes the damages ceiling contained in

the Medical Liability Act from other legislation which has been held to violate the open courts provision. Although someday a case may present itself in which the statutory limit on the remedy is so low that, practically speaking, suit is a useless act, we hold that this is not such a case.

■ Moreover, both the open courts provision and due process function only to prohibit the legislature from *arbitrarily* withdrawing a remedy or enacting a statute which is not rationally related to the goals sought to be achieved by the legislation. *See Sax*, 648 S.W.2d at 664–65 (the right to bring a common law cause of action cannot be effectively abrogated *absent a showing that legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress*); *see also Lebohm*, 154 Tex. at 197, 275 S.W.2d at 954; *In re B___ M___ N___*, 570 S.W.2d 493, 502 (Tex.Civ.App.—Texarkana 1978, no writ). For the reasons discussed under the equal protection claim below, we hold that the legislative basis for the Medical Liability Act is rationally related to the goals sought to be achieved by the legislature, and that those goals outweigh any limitation on the right of redress under the open courts provision of the Texas constitution.

Accordingly, we hold that section 11.02(a) of the Medical Liability Act does not violate article I, section 19 and article I, section 13 of the Texas constitution nor does it violate the due process clause of the fourteenth amendment of the United States Constitution.

### Equal Protection [4]

The United States Constitution provides that no state shall deny any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV, § 1. The Texas constitution provides that "all free men ... have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges." TEX. CONST. art. I, § 3. The Medical Liability

Act clearly creates different classes of plaintiffs which are treated differently under the law. It imposes a burden upon those damaged as a result of medical malpractice in excess of $500,000 that is not imposed upon those suffering damages from the same source with smaller claims. In addition, the Medical Liability Act imposes a burden on claimants damaged as a result of medical malpractice in excess of $500,000 which is not imposed upon those suffering equal damages whose source lies in a tort other than medical malpractice. Thus, we must determine whether the differing standards of treatment for different types of plaintiffs violates equal protection.

Generally, courts must evaluate legislative classifications that allegedly violate equal protection rights by applying a two-tier analysis. *See Spring Branch*, 695 S.W.2d at 559–60; *Detar*, 694 S.W.2d at 365. If the classification involves a fundamental right or a suspect classification such as race, the state bears a heavy burden to justify the classification by showing a compelling state interest. *See Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). In other areas, a restrained standard of review is applied, usually referred to as the "rational basis" test. *See Gallagher v. Crown Kosher Super Market of Massachusetts, Inc.*, 366 U.S. 617, 624, 81 S.Ct. 1122, 1125, 6 L.Ed.2d 536 (1961); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Detar*, 694 S.W.2d at 365. In addition, an intermediate standard of review has evolved requiring that a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced will be treated alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). This test has been applied by two states in reviewing the constitutionality of limits on recovery of damages resulting from medical liability claims.

---

4. We use the term "equal protection" to refer to both the equal protection clause of the fourteenth amendment of the United States Constitution and to the equal rights clause of article I, section 3 of the Texas constitution.

*See Carson,* 424 A.2d at 830–31; *Jones,* 555 P.2d at 407. However, because the United States Supreme Court has generally limited applicability of the "fair and substantial relation" test to cases involving classifications based on gender or illegitimacy, *see, e.g., Lalli v. Lalli,* 439 U.S. 259, 265, 99 S.Ct. 518, 523, 58 L.Ed.2d 503 (1978); *Reed v. Reed,* 404 U.S. 71, 76–77, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), *see also In re B____ M____ N____,* 570 S.W.2d at 499, we conclude that, for federal equal protection analysis, the proper test to be applied is the rational basis test. This test has been applied to challenges made under the Texas constitution. *Spring Branch,* 695 S.W.2d at 559–60.

Under the rational basis test, similarly situated individuals must be treated equally under the statutory classification unless there is a rational basis for not doing so. *Whitworth v. Bynum,* 699 S.W.2d 194, 197 (Tex.1985). A statute is not rendered unconstitutional, however, merely because it treats one class of plaintiffs differently from another, similarly situated class of plaintiffs. Instead, a state may classify its citizens into reasonable classes and apply different laws or apply its laws differently, to the classes without violating equal protection. *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 673 (Tex.1968); *Texas State Board of Public Accounting v. Fulcher,* 515 S.W.2d 950, 954 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n.r. e.). For example, the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE § 101.001 *et seq.* (Vernon 1986), limits the liability of the state and its agencies to damages of $250,000 for each person and $500,000 for each occurrence of bodily injury or death and limits the liability of a local government to damages of $100,000 for each person and $300,000 for each occurrence of bodily injury or death. Section 101.023. This ceiling on damages has been enforced by the Texas supreme court. *Madisonville Independent School District v. Kyle,* 658 S.W.2d 149, 150 (Tex.1983) (ordering remittitur of damages pursuant to TEX.REV.CIV.STAT.ANN. art. 6252–19, § 3, since recodified as section 101.023 of the Texas Civil Practice & Remedies Code).

In enforcing the damages ceiling of the Texas Tort Claims Act, the supreme court impliedly held the limitation constitutional, because the legislature, in waiving its sovereign immunity from suit, could not have attached as a condition to suit an unconstitutional provision. *Cf. Glen Ridge I Condominiums, Ltd. v. Federal Savings and Loan Insurance Corp.,* 734 S.W.2d 374 (Tex.App.—Dallas 1986, no writ) (Congress may not attach as a condition to its waiver of sovereign immunity an unconstitutional provision). Thus, just as treating those plaintiffs injured through the negligence of a governmental unit differently from those injured by the negligence of a private party does not violate the constitution; treating plaintiffs injured by medical malpractice differently from plaintiffs injured in some other way does not, by itself, establish the unconstitutionality of the Medical Liability Act. Instead, the standard by which equal protection claims are reviewed is whether the establishment of disparate treatment for different classes is rationally related to the goals the legislature sought to achieve by enacting the legislation.

In enacting the Medical Liability Act, the legislature made the following findings:

(1) the number of health care liability claims (frequency) has increased since 1972 inordinately;

(2) the filing of legitimate health care liability claims in Texas is a contributing factor affecting medical professional liability rates;

(3) the amounts being paid out by insurers in judgments and settlements (severity) have likewise increased inordinately in the same short period of time;

(4) the effect of the above has caused a serious public problem in availability of and affordability of adequate medical professional liability insurance;

(5) the situation has created a medical malpractice insurance crisis in the State of Texas;

(6) this crisis has had a material adverse effect on the delivery of medical and health care in Texas, including significant reductions of availability of medical and health care services to the people of

Texas and a likelihood of further reductions in the future;

(7) the crisis has had a substantial impact on the physicians and hospitals of Texas and the cost to physicians and hospitals for adequate medical malpractice insurance has dramatically risen in price, with cost impact on patients and the public;

(8) the direct cost of medical care to the patient and public of Texas has materially increased due to rising cost of malpractice insurance protection for physicians and hospitals in Texas;

(9) the crisis has increased the cost of medical care both directly through fees and indirectly through additional services provided for protection against future suits or claims; and defensive medicine has resulted in increasing cost to patients, private insurers, and the state and has contributed to the general inflation that has marked health care in recent years;

(10) satisfactory insurance coverage for adequate amounts of insurance in this area is often not available at any price;

(11) the combined effect of the defects in the medical, insurance, and legal systems has caused a serious public problem both with respect to the availability of coverage and to the high rates being charged by insurers for medical professional liability insurance to some physicians, health care providers, and hospitals;

(12) the adoption of certain modifications in the medical, insurance, and legal systems, the total effect of which is currently undetermined, may or may not have an effect on the rates charged by insurers for medical professional liability insurance;

(13) these facts have been verified by the medical Professional Liability Study Commission, which was created by the 64th Legislature. For further amplification of these facts the legislature adopts the findings of the report of the commission.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.02(a) (Vernon Supp.1986). In light of these findings, the stated purpose of the Medical Liability Act is to:

(1) reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in the Texas insurance, tort, and medical practice systems;

(2) decrease the cost of those claims and assure that awards are rationally related to actual damages;

(3) do so in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis;

(4) make available to physicians, hospitals, and other health care providers protection against potential liability through the insurance mechanism at reasonably affordable rates;

(5) make affordable medical and health care more accessible and available to the citizens of Texas;

(6) make certain modifications in the medical, insurance, and legal systems in order to determine whether or not there will be an effect on rates charged by insurers for medical professional liability insurance; and

(7) make certain modifications to the liability laws as they relate to health care liability claims only and with an intention of the legislature to not extend or apply such modifications of liability laws to any other area of the Texas legal system or tort law.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.02(b) (Vernon Supp.1986).

 We hold that there is a rational relationship between the different treatment of different classes of plaintiffs under the Medical Liability Act and the goals which the legislature sought to achieve by enacting the Act.

### Basis for treating medical malpractice claimants differently from other tort claimants

Determination of the wisdom, justice, necessity, or reasonableness of a law is the duty of the legislature, not the courts. *Smith v. Davis*, 426 S.W.2d 827, 831, (Tex. 1968); *Fulcher*, 515 S.W.2d at 954. There is a strong presumption that a legislature

understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds. *Davis,* 426 S.W.2d at 827. Although the legislature is not required to support its enactment by findings of fact, *see Massachusetts Indemnity and Life Insurance Co. v. Texas State Board of Insurance,* 685 S.W.2d 104, 111 (Tex.App.-Austin 1985, no writ), when it does so, courts are not at liberty to re-examine those facts. *See City of New Orleans v. Dukes,* 427 U.S. 297, 302, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (in equal protection analysis, court defers to legislative determinations as to the desirability of particular statutory discriminations); *cf. Day Land & Cattle Co. v. State,* 68 Tex. 526, 543, 4 S.W. 865, 873 (1887) (if the legislature states facts authorizing immediate passage of bill as an "emergency," courts have no power to re-examine those facts); *accord Little v. State,* 137 Tex. Cr.R. 298, 129 S.W.2d 307, 309 (1939); *Artcarved Class Rings, Inc. v. City of Austin,* 551 S.W.2d 788, 790–91 (Tex.Civ.App.— Eastland 1977, writ ref'd).

In passing the Medical Liability Act, the legislature found that the frequency and severity of health care liability claims have increased inordinately since 1972, and that as a result of those claims, a medical malpractice crisis has arisen, adversely affecting the cost and availability of medical health care. TEX.REV.CIV.STAT.ANN. art 4590i, § 1.02(a)(1–11) (Vernon Supp. 1986). In response to those findings, the legislature enacted the Medical Liability Act with the stated goals of decreasing the frequency, severity, and cost of health care claims, increasing the availability of affordable health care, and determining whether the Act will have an effect on medical liability insurance rates.[5] TEX.REV.CIV. STAT.ANN. art. 4590i, § 1.02(b)(1–6) (Vernon Supp.1986).

It is clear that the legislature's goals are rationally related to the facts found by the legislature. Moreover, because, as found by the legislature, it is the claims made by those injured through medical malpractice which have caused an increase in medical liability insurance costs and a corresponding decrease in available, affordable health care, it is rational that medical malpractice claimants be treated differently from other tort claimants in order to achieve the stated goals of the legislature. Thus we find no equal protection violation in treating medical malpractice claimants differently from other tort claimants.

Basis for treating medical malpractice claimants with large claims differently from those with smaller claims

In each of the Texas cases holding the damage limits of the Medical Liability Act unconstitutional, the courts have relied heavily on a statement made by the North Dakota Supreme Court in *Arneson v. Olson,* 270 N.W.2d 125 (N.D.1978). *See Detar,* 694 S.W.2d at 366; *Malone & Hyde,* 685 S.W.2d at 753; *Baber,* 672 S.W.2d at 298. In *Arneson,* the court held that a $300,000 limit on total damages recoverable in actions against health care providers violates the equal protection clauses of the United States and North Dakota constitutions. *Arneson,* 270 N.W.2d at 136. In doing so, the court stated: "Certainly the limitation of recovery does not provide adequate compensation to patients with meritorious claims; on the contrary, it does just the opposite for the most seriously injured claimants." *Arneson,* 270 N.W.2d at 135.

We find this argument unpersuasive for several reasons. First, in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the United States Supreme Court considered the validity of a family grant regulation which limited the total amount a family could receive to care for dependent children. Once the limit was reached, the arrival of additional

---

5. This last goal is not an improper one, although the answer to whether the Medical Liability Act will affect insurance rates is indefinite. *See Massachusetts Indemnity and Life Insurance Co. v. State Board of Insurance,* 685 S.W.2d 104,

111–12 (Tex.App.—Austin 1985, no writ) (legislature could enact legislation "merely to ascertain *whether*" goal would be achieved) (emphasis in original).

children would not increase the family grant, even though it was demonstrable that the grant would no longer meet the subsistence needs of the children. *See Dandridge*, 397 U.S. at 473–75, 90 S.Ct. at 1155–57. The Supreme Court held that such a regulation does not violate the equal protection clause of the United States Constitution. *Dandridge*, 397 U.S. at 486–87, 90 S.Ct. at 1162–63. Thus, it is apparent that a statute does not violate equal protection merely because it imposes a heavier burden on one class of citizens, even though those citizens may be the ones most clearly in need.

Second, in passing the Medical Liability Act, the legislature was responding to its findings that a medical malpractice insurance crisis exists in Texas and that significant reductions in availability of health care have resulted from this crisis. TEX. REV.CIV.STAT.ANN. art. 4590i, § 1.02(a)(5) & (6) (Vernon Supp.1986). The legislature also found that satisfactory insurance coverage for adequate amounts of insurance is often "not available at any price." TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.02(a)(10) (Vernon Supp.1986). Thus, the legislature could have concluded that, in the absence of insurance, claims would have to be paid from the assets of the health care providers, a practice which would serve to further decrease the availability of health care to all citizens. *Accord Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585, 601 (1980).

In addition, those most seriously damaged by medical malpractice are often those who will most likely need continuing medical care in the future. Thus, the legislative goal of assuring that adequate and affordable health care is available to all citizens is rationally related to the damages ceiling contained in the Medical Liability Act because such a ceiling may serve to reduce liability insurance premiums and thus increase availability of health care.

Finally, the legislature could properly have concluded that, in the absence of available health care insurance, collection of a judgment by one injured as a result of medical malpractice could be significantly impaired or rendered impossible because health care providers could choose to practice without insurance or with insurance containing lower policy limits. *Accord Johnson*, 404 N.E.2d at 601. Thus, even those most seriously injured and who suffer the largest damages benefit from the ceiling on damage recovery because the ceiling serves to increase the likelihood that claims will be paid.

Having found *Arneson* unpersuasive authority for holding that the damage limitations contained in the Medical Liability Act violate equal protection, we turn to the reasons why we believe the Act does not violate equal protection, even though it establishes different standards for treatment of medical liability claimants according to the size of recovery sought. In doing so, we bear in mind the rule that if there could exist a state of facts justifying legislative classifications or restrictions, the reviewing court will assume its existence. *Massachusetts Indemnity*, 685 S.W.2d at 109; *Reed v. City of Waco*, 223 S.W.2d 247, 252 (Tex. Civ.App.–Waco 1949, writ ref'd).

As earlier stated, one of the goals of the Medical Liability Act is to reduce the excessive frequency and severity of health care liability claims. TEX.REV.CIV.STAT. ANN. art. 4590i, § 1.02(b)(1) (Vernon Supp. 1986). Clearly, reducing the amount of damages recoverable on health care liability claims will reduce the severity of those claims. Additionally, the ceiling on recoverable damages may serve to reduce the frequency of health care liability claims. For those with frivolous claims, suit becomes less attractive where potential recovery is diminished. For those with legitimate claims, health care providers may be more willing to settle claims, and to settle claims sooner, where the maximum recoverable damages are a known, rather than an unknown, factor. Thus, treating medical liability claimants with large claims differently from those with smaller claims is rationally related to the goal of reducing the frequency and severity of health care liability claims.

Similarly, the legislative goal of reducing the frequency and cost of health care liability claims without unduly restricting a claimant's rights any more than necessary, *see* TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.02(b)(3) (Vernon Supp.1986), is rationally related to the different standards of treatment accorded medical liability claimants. The legislature could have concluded that the amount of recovery permitted under the Act will adequately compensate those claimants with the largest claims, even though full recovery may be denied. In addition, the legislature could have concluded that the ceiling on recoverable damages contained in the Medical Liability Act will affect relatively few claimants.

Finally, by enacting the Medical Liability Act, the legislature sought to make liability insurance available to health care providers at affordable rates and to make affordable health care more available to all citizens. TEX.REV.STAT.ANN. art. 4590i, § 1.02(b)(4-5) (Vernon Supp.1986). The legislature could have concluded that small claims do not have the same effect on liability availability of health care as do large claims. Thus, treating those with large claims differently from those claimants with small claims is rationally related to the goal of reducing liability insurance rates and increasing the availability of affordable health care.

Accordingly, we hold that section 11.02(a) of the Medical Liability Act does not violate article I, section 3 of the Texas constitution, nor does it violate the equal protection clause of the fourteenth amendment of the United States Constitution. Because we hold that section 11.02(a) of the Medical Liability Act is constitutional, we need not reach the question of the constitutionality of section 11.03 of the Medical Liability Act.

## ADJUSTMENT OF LIABILITY LIMITS

■ The Medical Liability Act provides that the damage limitations contained in section 11.02(a) shall be adjusted according to the percentage of increase or decrease in the consumer price index between August 29, 1977, the effective date of the Act, and "the time at which damages subject to such limits are awarded by final judgment." TEX.REV.CIV.STAT.ANN. art. 4590i, § 11.04 (Vernon Supp.1986). Ordinarily, the time at which damages are awarded is the date on which judgment is signed by the trial court. In the present case, however, the trial court rendered judgment notwithstanding the verdict that the Roses take nothing from the hospital. Thus, until today, no final judgment awarding damages has been entered. Because of the express language of the statute, we conclude that the percentage of increase in the consumer price index should be calculated from August 29, 1977 to today's date and judgment will be rendered accordingly. Because the damages awarded by the jury to Alton Rose and Frances Rose did not exceed the statutory limit, we render judgment for each of them on the jury verdict, subject to the remittitur suggested in the accompanying unpublished opinion.