**DALLAS TRANSIT SYSTEM and City of Dallas, Texas, Appellants,**

v.

**Harold Lloyd MANN, Appellee.**

**No. 05–87–00331–CV.**

Court of Appeals of Texas, Dallas.

April 11, 1988.

Rehearing Denied May 12, 1988.

J. Russell Ormesher, Dallas, for appellants.

Donna M. Atwood, Dallas, for appellee.

Before DEVANY, LAGARDE and THOMAS, JJ.

LAGARDE, Justice.

Dallas Transit System and the City of Dallas, Texas (collectively, the system) appeal from a district court judgment vacating an order of the City of Dallas Trial Board (the Board) which had sustained Harold Lloyd Mann's discharge as a system bus driver. The district court judgment remanded the order to the Board for modification of Mann's discipline from discharge to suspension without pay. We reverse and render.

Mann had been a bus driver with the system for nine years when it learned that Mann had accumulated four convictions for moving traffic violations within the preceding twenty-four consecutive months. Accordingly, on July 16, 1984, the system gave Mann notice that he was "disqualified" from continuing as a driver and that, because no vacant positions existed within the system for which Mann was qualified, he was removed from the payroll. The basis for Mann's disqualification as driver was article 4.10(a) of the system's personnel policies which provides:

4.10 *Driver Eligibility Requirements*

(a) ... Only those employees with safe driving records, who are physically fit, will be permitted to operate DTS vehicles. To maintain eligibility to operate DTS automotive equipment all employees who operate System automotive equipment as an essential part of their job duties including bus operators ... must comply with the following requirements:

\* \* \* \* \* \*

(3) Must not have:
(a) More than three convictions of moving violations in the last twenty-four (24) consecutive months.

Mann appealed his disqualification and discharge to the designee of the general manager of the system, then to the Employee Relations Committee of the Dallas Transit Board, then to the City of Dallas Civil Service Trial Board, in accordance with the system's grievance procedures.

At the hearing before the Board, Mann stipulated that he had been convicted of four moving traffic violations within the previous twenty-four month period, on the dates of September 1, 1982, October 15,

1982, October 13, 1983, and January 13, 1984. He argued, however, that he should not have been discharged, but should only have been suspended without pay until he no longer had four moving violations within the preceding twenty-four months. Mann argued that the term "ineligible" meant only that he would not be permitted to drive a bus from July 16, 1984, the date notice was given to him, until September 1, 1984, the date on which the oldest conviction for a moving violation became more than twenty-four months old.

The system argued that, once Mann was convicted of his fourth moving violation within the preceding twenty-four months, he could be discharged and, in order to again become eligible to drive for the system, would have to satisfy the criteria required of new employees. Under article 4.8(b)(2) of the system's personnel policies:

(b) All DTS applicants who will be required to operate System vehicles will meet the following safety criteria in addition to any other job related requirements as a condition for employment.

\* \* \* \* \* \*

(2) Must have a good private driving record. Not more than three convictions of moving violations in the last thirty-six (36) consecutive months....

Thus, according to the system, Mann would not have become re-eligible to drive for the system until September 1, 1985.

After the Board sustained Mann's discharge, Mann appealed to the district court. Pursuant to chapter XVI, section 12 of the City of Dallas Charter, the hearing in the district court was based on the record of the Board hearing. After the hearing in the district court, the court rendered judgment reversing the Board's order and remanding the order to the Board for modification of Mann's discipline from discharge to suspension without pay from July 16, 1984 until August 31, 1984. In its judgment, the court stated that it:

... is of the opinion that [Mann] was improperly discharged for the reason that the Dallas Transit System's Personnel Policies do not authorize discharge but only suspension without pay during [Mann's] period of ineligibility to drive a bus under those policies; and that [Mann's] period of ineligibility to operate a bus resulting from his disqualification as a driver under the Dallas Transit System's Personnel Policies should be treated as a suspension which terminated on September 1, 1984, when [Mann] no longer had four moving violations in a twenty-four month period....

In its third point of error, the system contends that the Board's order upholding Mann's discharge was supported by substantial evidence, and in its fourth point of error, the system contends that there is no evidence that Mann's discharge was an illegal, arbitrary, or capricious act. Because Mann stipulated that he had received four convictions for moving violations within the preceding twenty-four months, substantial evidence clearly existed that he had been so convicted. Mann, however, contends in his brief that "to attempt to categorize this as a substantial evidence case is ... misleading. [Mann] is not complaining about the facts presented at his hearing, but is complaining that the terms of article 4.10 were arbitrarily misconstrued by the" system. Thus, the question before us is whether, when substantial evidence exists to support an administrative decision, the district court is at liberty to interpret the personnel policies governing the administrative action and to review the discipline imposed under those policies.

The interpretation of a regulation by an agency charged with its enforcement is entitled to weight by the court, *Lloyd A. Fry Roofing Co. v. State*, 541 S.W.2d 639, 644 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.), and in cases where a trial court has appellate jurisdiction from the orders of a civil service commission or an administrative agency, the trial court has no authority to substitute its findings for the findings of the agency below. *City of Waco v. Akard*, 252 S.W.2d 496, 500 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.). The propriety of a particular disciplinary action and the suitability of the employee to continue to exercise his functions are important matters of

internal administration with which the courts should not interfere in the absence of a clear showing of abuse of authority. *See City of Carrollton · v. Keeling,* 560 S.W.2d 488, 493 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Even where, on appeal, the standard of review is whether substantial evidence exists to support the agency's action, the true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency. *Texas Health Facilities Commission v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452–53 (Tex.1984). Thus, we hold that where, as here, the sufficiency of the evidence presented is not challenged but, instead, the agency's interpretation of its own regulations and policies and the discipline imposed under them is the sole basis for complaint, the agency's determination should not be disturbed in the absence of a clear showing of abuse of authority. We find no clear abuse of authority in the present case.

■ The personnel policies at issue do not define the term "ineligible," nor do they address the question of whether a driver's ineligibility to drive a bus will result in suspension without pay or discharge. Nevertheless, keeping in mind the deference to be given an agency's interpretation of its own regulations, we cannot say that the Board's decision that an ineligible driver may be discharged and required to satisfy the criteria required of new applicants is a clear abuse of discretion. While in the present case the punishment may seem harsh because, under his interpretation of the policies, Mann would have been eligible to drive a bus one and one-half months after he was given notice of his discharge, mere harshness of the discipline imposed is not sufficient to overcome an agency's determination. *See Keeling,* 560 S.W.2d at 493; *Harvey v. Nunlist,* 499 F.2d 335, 336 (5th Cir.1974). In addition, although Mann's interpretation of the policies and the facts of his case would have led to only a short term of suspension, the same might not be true in every case. We see no reason why the system could not interpret its policies so as to avoid lengthy suspensions of drivers. We sustain the system's third and fourth points of error.

■ At the hearings below and during oral argument before this court, Mann contended that the system's decision to discharge him, rather than to suspend him without pay, denied him substantive due process and equal protection. The system, in its seventh point of error, contends that there is no evidence to support this claim. Mann's substantive due process claim is based upon his contention that the system and the Board "arbitrarily misconstrued" its own policies. We have rejected this argument; thus, we need not further address that issue. Mann's equal protection argument is based upon the different treatment given drivers who have been convicted of more than three moving violations and those who have been involved in traffic accidents. Mann also argued that drivers who have become "ineligible" to drive because they have been convicted of more than three moving violations are treated differently from those who become "ineligible" to drive due to a physical disability. Mann argued that the different treatment violated his rights under the equal protection clause of the United States constitution and the equal rights clause of the Texas constitution. U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 3. We disagree.

■ Equal protection is not violated merely because one class of citizens is treated differently from another, similarly situated, class of citizens. *See Rose v. Doctors Hospital Facilities,* 735 S.W.2d 244, 250 (Tex.App.—Dallas 1987, writ granted). Instead citizens may be classified into reasonable classes and different laws may be applied, or laws may be applied differently, to the classes without violating equal protection. *See Rose,* 735 S.W.2d at 250; *see also Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 673 (Tex.1968); *Texas State Board of Public Accountancy v. Fulcher,* 515 S.W.2d 950, 954 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Instead, the standard by which equal protection claims are

reviewed is whether the establishment of disparate treatment for different classes is rationally related to the goals sought to be achieved. *Rose*, 735 S.W.2d at 250.

 Viewed in this light, it is clear that the system had a rational basis for treating drivers who have been convicted of more than three moving violations differently from those who had been involved in accidents. The system's personnel policies provide that, in the event of a preventable accident, the driver may be disciplined in accordance with the degree of negligence involved, the severity of the accident, and the driver's past driving record. The policies set up a "point" system by which points are assigned depending on the severity of the accident and provide for progressive discipline ranging from counseling to discharge according to the number of points accumulated against a driver. Because no similar progressive discipline is provided for the accumulation of moving traffic violation convictions, Mann argues that the system had denied him equal protection. Mann's argument fails for several reasons. First, the accident policy itself may lead to the discharge of a driver involved in his first serious, preventable accident; thus, contrary to Mann's argument, the accident policy does not always provide for progressive discipline before discharge. Second, the accident policy applies to every preventable accident, regardless of how minor the accident may be. Thus, the system could have determined that minor discipline such as counseling was appropriate for minor accidents, but it could also have determined that conviction of more than three moving traffic violations within twenty-four months was a more serious violation that deserved a more severe punishment. Finally, the system could have considered the degree of wilful conduct involved in convictions for moving traffic violations and compared it to the lesser degree of wilful conduct engaged in by a driver involved in a minor accident. This distinction supports the different standards of treatment for drivers involved in accidents and drivers who have been convicted of more than three moving traffic violations.

It is equally clear that the system had a rational basis for treating those drivers who become "ineligible" to drive because they have been convicted of more than three moving violations differently from those who become "ineligible" to drive due to a physical disability. Conviction of several moving traffic violations suggests at least that the driver voluntarily acted in an undesirable manner, while no such fault or voluntary behavior exists when a driver becomes physically unable to drive a bus. This distinction is sufficient to support the system's disparate treatment of drivers convicted of more than three moving violations and those who are physically unable to drive a bus. We find Mann's equal protection claim meritless, and we sustain the system's seventh point of error.

The trial court's judgment is reversed and judgment is rendered that appellee, Harold Lloyd Mann, take nothing against appellants, Dallas Transit System and City of Dallas, Texas.