**COLUMBIA HOSPITAL CORPORATION OF HOUSTON d/b/a Columbia Bellaire Medical Center, Appellant,**

v.

**Jesse MOORE and Charlotte Johnston and Carolyn Hale, Individually and as Representatives of the Estate of Katherine Moore, Deceased, Appellees.**

**Jesse Moore and Charlotte Johnston and Carolyn Hale, Individually and as Representatives of the Estate of Katherine Moore, Deceased, Appellants,**

v.

**Columbia Hospital Corporation of Houston d/b/a Columbia Bellaire Medical Center, Appellee.**

**No. 01–99–00284–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 23, 2001.

Donald P. Wilcox, for Amicus Curiae.

P. Michael Jung, Dallas, for Appellant.

Richard Frankel, Houston, for Appellee.

Panel consists of Justices COHEN, TAFT, and PRICE.*

### OPINION

COHEN, Justice.

The first-impression issues in this appeal are (1) whether prejudgment interest assessed under the Medical Liability and Insurance Improvement Act's (MLIIA)[1] subchapter P is excluded from the damages cap and (2) whether the damages cap applicable to a single defendant who is jointly and severally liable may be multiplied by the number of culpable defendants. The trial judge answered both in the affirmative and rendered judgment ac-

---

\* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. TEX.REV.CIV.STAT.ANN. art. 4590i, §§ 1.01–16.02 (Vernon Supp.2001).

cordingly. We agree with the trial judge only on the first issue. Accordingly, we reverse and remand with instructions.

## I. Background

Charlotte Johnson and Carolyn Hale, individually and as the representatives of the estate of Kathrine Moore, deceased, and Jesse Moore (the Moore parties) sued Columbia Hospital Corporation of Houston d/b/a Columbia Bellaire Medical Center (Columbia) and Katherine Moore's two treating physicians, Drs. Uriel Mushin and Jordan Train, under the wrongful death and survival statutes for Katherine Moore's death after surgery at Columbia and for their own resulting mental anguish and loss of companionship and consortium. The jury found all defendants negligent; assessed causal negligence at 60 percent to Columbia, 30 percent to Dr. Mushin, and 10 percent to Dr. Train; and found plaintiffs' actual damages collectively to be $3 million.

Without capping Columbia's liability under the MLIIA, the trial judge rendered judgment on November 18, 1998 on the jury verdict, plus pre- and postjudgment interest, stipulated medical expenses of $174,202.53, and stipulated funeral expenses of $4,361. The judge also found Columbia jointly and severally liable for all damages awarded to all plaintiffs. On December 31, 1998, the trial judge modified the final judgment to reflect the damages cap ($1,305,691[2]) applicable to Columbia, but applied that cap separately to each plaintiff's damages, rather than to the collective award against Columbia. Consequently, because only Columbia's liability to the estate exceeded the single cap amount, only that award was capped; Columbia's liability to the other plaintiffs was not capped. The judge also excluded prejudgment interest, funeral expenses, and medical expenses from the cap.[3] The judge further found Columbia jointly and severally liable for all medical and funeral expenses awarded to the estate and for all damages awarded to all plaintiffs other than the estate. The awards may be summarized as follows (the shaded areas indicate those sums for which Columbia was held jointly and severally liable):

| Defendant | Plaintiff | Principal Amount | Prejudgment Interest | Total Amount |
|---|---|---|---|---|
| Columbia | Estate (non-medical/non-funeral) | $ 1,305,691[4] | $ 300,487.79 | $1,606,178.79 |
| | Estate (medical/funeral) | $ 107,138.12 | $ 24,656.44 | $ 131,794.56 |
| | Jesse Moore | $ 300,000 | $ 34,520.55 | $ 334,520.55 |
| | Charlotte Johnson | $ 30,000 | $ 3,452.06 | $ 33,452.06 |
| | Carolyn Hale | $ 30,000 | $ 3,452.06 | $ 33,452.06 |
| | Totals: | $1,772,829.12 | $ 366,568.90 | $2,139,398.02 |
| Dr. Mushin | Estate (non-medical/non-funeral) | $ 720,000 | $ 165,698.63 | $ 885,698.63 |
| | Estate (medical/funeral) | $ 53,569.06 | $ 12,328.22 | $ 65,897.28 |

2. The parties agree that the value of the single damages cap was correctly calculated for the date of trial.

3. No one disputes that medical expenses were properly excluded from the MLIIA's damages cap. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 11.02(b) (Vernon Supp.2001) (exempting past and future "expenses of necessary medical, hospital, and custodial care" from the damages cap).

4. The MLIIA damages cap was applied in calculating this amount.

| | | | | |
|---|---|---|---|---|
| | Jesse Moore | $ 150,000 | $ 17,260.27 | $ 167,260.27 |
| | Charlotte Johnson | $ 15,000 | $ 1,726.03 | $ 16,726.03 |
| | Carolyn Hale | $ 15,000 | $ 1,726.03 | $ 16,726.03 |
| | **Totals:** | **$ 953,569.06** | **$ 198,739.18** | **$1,152,308.24** |
| Dr. Train | Estate (non-medical/non-funeral) | $ 240,000 | $ 55,232.88 | $ 295,232.88 |
| | Estate (medical/funeral) | $ 17,856.35 | $ 4,109.41 | $ 21,965.76 |
| | Jesse Moore | $ 50,000 | $ 5,753.42 | $ 55,753.42 |
| | Charlotte Johnson | $ 5,000 | $ 575.34 | $ 5,575.34 |
| | Carolyn Hale | $ 5,000 | $ 575.34 | $ 5,575.34 |
| | **Totals:** | **$ 317,856.35** | **$ 66,246.39** | **$ 384,102.74** |
| ***Plaintiffs' Total Combined Recovery*** | | **$3,044,254.53** | **$ 631,554.47** | **$ 3,675,809** |

Columbia moved to modify the December 31st judgment, arguing the trial judge erred by (1) holding Columbia jointly and severally liable for amounts over the MLI-IA single damages cap of $1,305,691 (all shaded areas in the chart above); (2) applying the damages cap to each plaintiff's award, rather than to the collective damages awarded against Columbia; and (3) not capping funeral expenses and prejudgment interest. The Moore parties also moved to modify the December 31st judgment, arguing the judge erred by (1) limiting Columbia's joint and several liability to exclude most damages awarded to the estate against the doctors (the first row of damages awarded against each doctor, unshaded in the chart above) and (2) capping Columbia's damages to the estate at $1,305,691, the value of a single damages cap, rather than at $3,917,073, the value of a single damages cap multiplied by three for the number of culpable defendants. Both motions were overruled by operation of law.

Drs. Mushin and Train settled after judgment for an undisclosed amount. Columbia and the Moore parties appeal.

## II. The Issues on Which Both Parties Agree

### A. Application of the Damages Cap on a Per–Plaintiff Basis

■ In their issue one, both parties argue the trial judge erred in applying the MLIIA damages cap—however it is calculated—on a per-plaintiff basis, rather than on a per-defendant basis. We agree. *See Rose v. Doctors Hosp.,* 801 S.W.2d 841, 847 (Tex.1990) ("[T]he damages cap should be applied on a 'per defendant' basis because the language of § 11.02(a) clearly applies to the recovery against the individual defendant, not the award to the individual plaintiff.").

We sustain both parties' issue one.

### B. Funeral Expenses

■ In issue four, Columbia argues the trial judge erred by not including funeral expenses within the damages subject to the MLIIA damages cap. The Moore parties' brief concedes this. *Compare* TEX. REV.CIV.STAT.ANN. art. 4590i, § 11.02(b) (Vernon Supp.2001) (exempting only past and future "expenses of necessary medical, hospital, and custodial care" from the damages cap).

Accordingly, we sustain Columbia's issue four.

### III. Prejudgment Interest and the MLIIA's Damages Cap

In issue three, Columbia argues the trial judge erred by not capping prejudgment interest. We disagree.

#### A. The Statutes

MLIIA subchapter K, section 11.02 provides as follows:

In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000.[5]

TEX.REV.CIV.STAT.ANN. art. 4590i, § 11.02(a) (Vernon Supp.2001). This subchapter was part of the MLIIA as originally enacted in 1977. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, Part 1, 1977 Tex.Gen. Laws 2039, 2052–53 (effective August 29, 1977).

From 1987 to 1995,[6] medical malpractice plaintiffs collected prejudgment interest under the general prejudgment interest statute, which provided "a judgment in a wrongful death, personal injury, or property damage case must include prejudgment interest." *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 Tex. Gen. laws 51, 51, *repealed by* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (now codified at TEX.FIN.CODE ANN. § 304.102 (Vernon Supp.2001), with the following change in

language: "A judgment in a wrongful death, personal injury, or property damages case earns prejudgment interest ."). In 1995, the legislature enacted MLIIA subchapter P, which reads in pertinent part as follows:

Sec. 16.01. Notwithstanding [the general prejudgment interest statute, now codified at TEX.FIN.CODE ANN. §§ 304.101–.108 (Vernon Supp.2001) ], prejudgment interest in a health care liability claim *shall be awarded* in accordance with this subchapter.

Sec. 16.02.

. . .

(b) In a health care liability claim that is not settled within the period specified by Subsection (a) of this section, *the judgment must include* prejudgment interest on past damages found by the trier of fact, but shall not include prejudgment interest on future damages found by the trier of fact.

TEX.REV.STAT.ANN. art. 4590i, §§ 16.01, 16.02(b) (Vernon Supp.2001) (emphasis added).

#### B. *Horizon/CMS Healthcare Corp. v. Auld*

After the parties filed their briefs, the Texas Supreme Court resolved much of this issue in *Horizon/CMS Healthcare Corp. v. Auld,* 43 Tex.S.Ct.J. 1151, 34 S.W.3d 887 (2000) (designated for publication). The parties have filed supplemental

---

**5.** The $500,000 cap is adjusted for inflation at the date of judgment under a formula based on the consumer price index. *See* TEX.REV.CIV. STAT.ANN. art. 4590i, § 11.04 (Vernon Supp. 2001). The parties agree that the single cap was correctly calculated under this formula at the time of judgment as $1,305,691.

**6.** Prejudgment interest first became available in personal-injury suits in 1985, when the Texas Supreme Court decided *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549,

552–54 (Tex.1985); *see also Horizon/CMS Healthcare Corp. v. Auld,* 43 Tex.S.Ct.J. 1151, 1158, 34 S.W.3d 887, 890–91 (Tex. Aug. 24, 2000) (designated for publication) (recognizing same). Codification followed in 1987. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 Tex. Gen. laws 51, 51, *repealed by* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (now codified at TEX.FIN.CODE ANN. § 304.102 (Vernon Supp.2001)).

briefs on *Auld*'s effect. The Auld Court held prejudgment interest awarded on damages subject to the cap and *under the general prejudgment interest statute,* not under subchapter P, fell within section 11.02(a)'s damages cap. *Id.* at 1151, 1161, 1165, 34 S.W.3d 887, 890, 901–02, 907. The Court expressly rejected all but one argument the Moore parties raised in their original brief in this Court.[7] *See id.* at 1157–59, 34 S.W.3d 887, 897–98.

## C. The Sole Issue Remaining After *Auld*

■ The sole remaining issue after *Auld* is whether the legislature, by adding MLIIA subchapter P in 1995, intended to exclude prejudgment interest from MLIIA subchapter K's cap. *See Auld,* 43 Tex. S.Ct.J. at 1159 n. 13, 1165, 34 S.W.3d 887, 900 n. 13, 906–07 (declining to consider whether Court's holding created a conflict with subchapter P because subchapter P did not apply, and holding prejudgment interest is capped in cases not governed by subchapter P, *i.e.,* those cases governed instead by the general prejudgment interest statute).

■ This Court must harmonize, if possible, subchapter K's damages cap with subchapter P's requirement of prejudgment interest. *See, e.g., Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 495 (Tex.1993). Our ultimate goal is to give effect to the legislature's intent. *Auld,* 43 Tex.S.Ct.J. at 1153, 34 S.W.3d 887, 892–93.

Both subchapters use mandatory language. *Compare* TEX.REV.CIV.STAT.ANN. art. 4590i, § 11.02(a) (civil liability for damages "shall be limited") *with id.* at § 16.01 (prejudgment interest "shall be awarded") *and* § 16.02(b) (judgment "must include" prejudgment interest). Neither references the other.

It is possible to read the MLIIA to support either party's position. For example, Columbia argues that, had the legislature intended for the prejudgment interest requirement of subchapter P to prevail over the then 18–year–old liability limitation of subchapter K, it would have said so, but did not. This argument is bolstered by the fact that, when the legislature wanted to exempt a type of damages from the cap, it did so expressly. *See* TEX.REV.CIV. STAT.ANN. art. 4590i, § 11.02(b), (c) (expressly exempting from cap expenses of necessary medical, hospital, and custodial care and providing cap does not limit an insurer's liability in a *Stowers* situation). Such express "exemption" language for prejudgment interest does not appear in subchapter P or anywhere else in the MLIIA.

However, neither does subchapter P (prejudgment interest) expressly state it is limited by subchapter K (damages cap). *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 16.01 (stating only, "Notwithstanding [the general prejudgment interest statute], prejudgment interest in a health care liability claim shall be awarded . . ."); *see also Auld,* 43 Tex.S.Ct.J. at 1166, 34 S.W.3d 887, 908 (Hankinson, J., dissenting) ("[Subchapter P] does confirm that pre-

---

**7.** The Moore parties' arguments that the *Auld* Court has rejected are that (1) prejudgment interest is not a form of common law damages, (2) the legislative history shows no intent to cap prejudgment interest, (3) prejudgment interest's unavailability at the time of MLIIA's enactment shows the legislature did not intend to cap it, and (4) the awarding of prejudgment interest in the judgment in *Rose v. Doctors Hosp.,* 801 S.W.2d 841 (Tex.1990), although not mentioned in the opinion, had precedential effect. The Moore parties apparently recognize the overruling of these arguments because their supplemental brief on *Auld*'s effect does not reassert them.

judgment interest is not subject to the cap or surely the Legislature would have mentioned or referred to the cap in that new subchapter."). And subchapter P mandates the award of prejudgment interest. *See* TEX.REV.CIV.STAT.ANN. art. 4590i, §§ 16.01, 16.02 (prejudgment interest "shall be awarded"; judgment "must include" prejudgment interest). While Columbia correctly notes that neither subchapter states it is limited by the other, subchapter P was added in 1995, and, although the MLIIA has since been amended, subchapter K has not been amended to state it prevails. Therefore, subchapter P is the "later-enacted statute": the legislature amended the MLIIA after subchapter P's 1995 enactment, but never in any way that expressly subjects subchapter P to subchapter K. One rule of statutory construction is that the later-enacted statute controls in case of a conflict. TEX.GOV. CODE ANN. § 311.025(a) (Vernon 1998). If we conclude the two subchapters conflict, we might under this rule conclude that subchapter P's mandatory language was intended to prevail, exempting prejudgment interest entirely from the cap.

Columbia also argues House Bill analysis indicates that, in adding subchapter P, the legislature was concerned only with barring prejudgment interest on future damages and allowing it to accrue from the injury date on past damages, rather than with creating another exception to subchapter K's damages cap:

> Prejudgment interest on future damages are [sic] eliminated. The substitute will bar the award of prejudgment interest on damages which have not occurred at the time of judgement. It will also allow prejudgment interest on past damages to accrue from the date of injury.

*See House Comm. on Civil Practices, Bill Analysis*, Tex. H.B. 971, 74th Leg., R.S. (1995). Columbia's argument may be sup-

ported by the fact that subchapter P states that it applies "notwithstanding [the general prejudgment interest statute]," *perhaps* indicating an intent merely to alter the general prejudgment interest statute's breadth, but not the cap's application. However, the quoted bill analysis does not necessarily preclude another purpose, such as mandating prejudgment interest despite the cap. *See Auld,* 43 Tex.S.Ct.J. at 1165, 1166, 34 S.W.3d 887, 906–07 (Hankinson, J., dissenting) (four justices concluding enactment of subchapter P showed intent to exclude prejudgment interest from the MLIIA's cap). Neither party relies on any other legislative history.

Because the statute could be read to support either party's position, we look to *Auld* for guidance, although it did not rule on subchapter P. In it, the Court held as follows:

> The Legislature expressly provided only one exception to that cap, section 11.02(b), which states:
>
> > Subsection (a) of this section does not apply to the amount of damages awarded on a health care liability claim for the expenses of necessary medical, hospital, and custodial care received before judgment or required in the future for treatment of the injury.
>
> Is prejudgment interest excepted from the cap? Obviously not. Is prejudgment interest included in the cap? Because section 11.02(a) mandates that the cap applies to a health-care provider's "civil liability for damages," the definition of that phrase governs the answer to the question. Section 1.03(b) directs that "[a]ny legal term or word of art used in this part, not otherwise defined in this part, shall have such meaning as is consistent with the common law." Prejudgment interest falls within the common-law meaning of "damages." As

such, section 11.02(a) mandates that prejudgment interest is subject to the cap. *Id.*, 43 Tex.S.Ct.J. at 1157–58, 34 S.W.3d 887 (citations omitted); *see also id.* at 1158, 34 S.W.3d 887 ("First, the conclusion that prejudgment interest is uncapped is contrary to the clear legislative intent of section 11.02(a) to cap all liability for 'damages,' as that term is defined in the common law, except for those medical expenses excepted from the cap in section 11.02(b). This intent has never been altered or diminished by the Legislature....").

Auld responded that, if the cap included prejudgment interest, that section would conflict with the general prejudgment interest statute because the former mandated a liability cap, while the latter mandated a prejudgment interest award. *Auld*, 43 Tex.S.Ct.J. at 1159–60, 34 S.W.3d 887, 899–901. The Court disagreed. It held that reading section 11.02(a) to prevail over the general prejudgment interest statute comported with the liability-limitation scheme that was "unique" to article 4590i's "self-contained structure" and also effectuated that statute's clear intent to limit liability for health care claims. *Id.*, 43 Tex.S.Ct.J. at 1160, 34 S.W.3d 887, 900–01. The Court further noted its conclusion was consistent with the statutory construction principle that the more specific statute (MLIIA section 11.02(a)) controls over the more general one (the general prejudgment interest statute). *Id.* The Court continued:

> This, of course, does not mean that [the general prejudgment interest statute] is wholly inapplicable in article 4590i cases. There will be many instances when the section 11.02(a) damages do not exceed—or even come close to—the cap. In those instances, [the general prejudgment interest statute] requires that prejudgment interest be added as damages

up to the amount of the cap. Thus, the statutes can be harmonized to the extent that damages—including prejudgment interest—do not exceed the cap.

*Id.*

The majority repeatedly cited the MLIIA's purpose, which is to limit, not expand, health care providers' civil liability for damages. *See id.* at 1153–54, 34 S.W.3d 887 (noting legislative rationale for capping damages), 1157 ("It is clear—from the language used in the statute and the legislative intent—that the Legislature placed *an unequivocal limit* on the amount that a health-care provider must pay in a final judgment under [the MLIIA].") (emphasis added), 1160 ("The purpose of article 4590i is to limit, not expand, a health-care provider's 'civil liability for damages.' "); *see also* Tex.Rev.Civ.Stat. Ann. art. 4590i, §§ 1.02(a)(1)-(11) (finding that health care liability claims and insurance payments for same have increased inordinately, that effect is to cause serious problem in insurance availability and affordability, etc.), 1.02(b)(1)-(5) (stating MLIIA's purpose is to reduce frequency and severity of such claims, to make health care more affordable and accessible through reform, etc.).

Then there is the dissent. *Auld* is a 5–4 opinion. Even though all justices agreed that subchapter P did not apply, the four dissenting justices nonetheless strongly expressed their belief that prejudgment interest awarded under subchapter P is not capped:

> My conclusion that prejudgment interest should not be capped is further supported by the Legislature's 1995 enactment of article 4590i, subchapter P, entitled "Prejudgment Interest," which mandates that a health-care liability judgment "must include prejudgment interest on past damages found by the trier of fact, but shall not include prejudgment interest on future damages

found by the trier of fact." Tex.Rev.Civ. Stat.Ann. art. 4590i, § 16.02. Although that section does not apply to this case because the claim at issue accrued before its enactment, that section does confirm that prejudgment interest is not subject to the cap or surely the Legislature would have mentioned or referred to the cap in that new subchapter. Moreover, in section 16.02, the Legislature specifically mandates prejudgment interest on past damages, but forbids it on future damages. Tex.Rev.Civ.Stat. Ann. art. 4590i, § 16.02(b). This distinction further suggests that the Legislature did not intend to uncap previously capped prejudgment interest, but rather, working from the basis that prejudgment interest is fully available, determined to limit it to past damages. The Court's application of the cap in this case unnecessarily casts doubt on the provision's effect despite its clear language, and creates an inconsistency within article 4590i despite the Legislature's apparent efforts at careful drafting.

*Id.*, 43 Tex.S.Ct.J. at 1166, 34 S.W.3d 887, 908 (Hankinson, J., dissenting); *see also id.* at 1165–66, 34 S.W.3d 887, 906–08 (Hankinson, J., dissenting) ("As far as I can tell, at best all the Court has done is cap prejudgment interest from 1985 to 1995 ... At worst the Court creates ... an internal conflict between the article 4590i's cap and its new prejudgment-interest provision.").

Justice Hankinson continued:

If the statutes are reconciled as I propose, the Legislature's overriding goal of keeping health-care liability damages reasonably determinable and predictable in an effort to ameliorate the costs of the health-care system is still met. If one knows the amount of damages to be awarded under the cap and the prejudgment-interest rate, one can simply calculate the amount of prejudgment interest owed. Damages remain capped as dictated by article 4590i, section 11.02, but prejudgment interest can also be awarded as dictated by [the general prejudgment interest statute].[8] ...

Thus, instead of harmonizing article 4590i and the prejudgment-interest statute so as to give effect to both, the Court's reading at best ignores the mandatory language of the prejudgment-interest statute and at worst creates an unnecessary conflict between that statute and article 4590i, and an internal conflict between article 4590i's cap and its new prejudgment-interest section. If prejudgment interest is not included in the cap, all parts of both statutes can be given full effect for all claims; actual damages remain capped under article 4590i, and prejudgment interest is awarded on the judgment, with no violence done to the Legislature's express purpose and language in article 4590i.

*Id.*, 43 Tex.S.Ct.J. at 1167, 34 S.W.3d 887, 909 (Hankinson, J., dissenting).

### 5. Resolution

*Auld*'s holding was expressly limited to the prejudgment interest statute. Nevertheless, the majority opinion was based in large part on prejudgment interest's being "damages." *See id.* at 1158, 34 S.W.3d 887, 898 (holding prejudgment interest awarded under the general statute was "damages," which are subject to the MLIA's cap); *see also* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 11.02(a) (capping "civil liability for damages"). Of course, prejudgment interest is still "damages," no matter what statute awards it.

8. We note that the same argument would apply to subchapter P.

Nonetheless, if by enacting subchapter P the legislature meant to require prejudgment interest *despite* the cap, then the fact that it is "damages" would not matter. Nor would it matter that prejudgment interest is not expressly listed in subchapter K's exemptions. *Cf. Auld,* 43 Tex.S.Ct.J. at 1155, 34 S.W.3d 887, 894–95 (in majority opinion, in holding subchapter K did not cap punitive damages, reasoning, "Furthermore, the Legislature's specific exclusion of medical expenses [under subchapter K, section 11.02(b) ] does not compel the conclusion that the Legislature intended to include *all* damages—even non-compensatory damages—within the cap. 'The doctrine of *expressio unius est exclusio alterius* is simply an aid to determine legislative intent, not an absolute rule.' ") (emphasis in original; citations omitted). *Auld* is further distinguishable to the extent that its holding is based on article 4590i's "self-contained structure" and on section 11.02(a)'s being the more specific statute. Here, in contrast, subchapters K and P are part of the same statute; thus, neither is more "specific" than the other. Finally, if the legislature intended for subchapter P to prevail over subchapter K, then, although liability would increase to the extent prejudgment interest exceeds the cap, it would do so in predictable ways and would thus not necessarily thwart the legislative goals of predictable damages and affordable insurance coverage. *See id.,* 43 Tex.S.Ct.J. at 1167, 34 S.W.3d 887, 899–900 (Hankinson, J., dissenting); *see also id.* at 1153–54, 34 S.W.3d 887, 892–93 (in majority opinion, noting that article 4590i's underlying purpose is to make insurance coverage affordable, thereby increasing the availability of medical care in Texas); Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.02(b)(1)-(2), (4)-(5) (stating the MLIIA's purpose is to reduce excessive frequency, cost, and severity of health care liability claims and to make health care and its liability insurance more affordable and available).

More importantly, even though subchapter P did not apply, the four dissenting justices went out of their way to express their belief that prejudgment interest awarded under subchapter P is not capped. This is a present glimpse at a future holding. It is a 4–0 advance ruling in favor of the Moore parties' position because the remaining five justices have yet to rule on the matter. *See Auld,* 43 Tex.S.Ct.J. at 1159 n. 13, 1165, 34 S.W.3d 887, 900 n. 13, 906–07 (limiting holding to general prejudgment interest statute).

### D. Conclusion

We hold *Auld*'s holding on prejudgment interest awarded under the general statute is not binding when prejudgment interest is awarded under MLIIA subchapter P, given the majority's expressly limiting that holding to the former statute. We further hold that the enactment of subchapter P—the later-enacted statute employing mandatory language—shows a legislative intent to exclude prejudgment interest awarded under it from the cap. Accordingly, we hold the Moore parties may recover prejudgment interest on all damages.

We overrule Columbia's issue three.

### IV. Damages Cap Applied to a Defendant Who is Jointly and Severally Liable

■ In its issue two, Columbia argues the trial judge erred by using Columbia's joint and several liability to award damages in excess of the single damages cap of $1,305,691. In their issues two and three, the Moore parties argue the trial judge erred in limiting Columbia's joint and several liability at all because a $3,917,073 damages cap—the single damages cap

multiplied by three for the number of culpable defendants—applied and because the damages awarded against all defendants totaled only $3,675,809. We agree with Columbia.

## A. The Statutes

The comparative responsibility statute provides as follows:

### § 33.013. Amount of Liability.

(a) Except as provided in Subsections (b) and (c), a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed.

(b) Notwithstanding Subsection (a), each liable defendant is, in addition to his liability under Subsection (a), jointly and severally liable for the damages recoverable by the claimant under Section 33.012[9] with respect to a cause of action if the percentage of responsibility attributed to the defendant is greater than 50 percent. . . .

TEX.CIV.PRAC. & REM.CODE ANN. § 33.013(a), (b) (Vernon 1997) [hereinafter "CPRC"]. MLIIA section 11.02(a) is quoted above.

## B. The Statutes' Plain Meaning

■ We attempt to harmonize CPRC section 33.013(b) and MLIIA section 11.02(a) while giving effect to the legislature's intent. *See Auld,* 43 Tex.S.Ct.J. at 1153, 34 S.W.3d 887, 892–93; *Dallas Mer-*

*chant's & Concessionaire's Ass'n,* 852 S.W.2d at 495. If a statute is unambiguous, we follow its clear language. *E.g., Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999).

MLIIA section 11.02(a) provides that "the limit of civil liability for damages *of the* physician or health care provider *shall be limited* to an amount *not to exceed $500,000* [as adjusted for inflation]." (Emphasis added.) There is no mention of other culpable health care providers, much less of multiplying this cap by their number. To the contrary, the section states unambiguously that liability of "the" health care provider "shall" be limited to the cap.

## C. The MLIIA's Purpose

This plain reading comports with the MLIIA's purpose, which was to "reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in the Texas insurance, tort, and medical practice systems," thereby making health care and its liability insurance more affordable and available. *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.02(b)(1)-(2), (4)-(5); *accord Auld,* 43 Tex.S.Ct.J. 1153–54, 1157, 1160, 34 S.W.3d 887, 892–93, 897, 900–01. Limitation of damages was considered an essential part of the goal of reducing medical malpractice premiums by the legislature and the "Keeton Commission,"[10] whose findings the legislature adopted in enacting article 4590i. *See* Darrell L. Keith, *The Texas Medical Liability Insurance and Improvement Act—A Survey and Analysis of its History, Construction and*

---

**9.** Section 33.012 requires the claimant's recovery to be reduced by his percentage responsibility and by any applicable settlement credits. TEX.CIV.PRAC. & REM.CODE ANN. § 33.012 (Vernon 1997).

**10.** *See* TEXAS MEDICAL PROFESSIONAL LIABILITY STUDY COMMISSION, FINAL REPORT TO THE 65TH TEXAS LEGISLATURE ["Keeton Commission Re-

port"] 5–6, 7, 11, 13–14 (Dec.1976) (concluding substantial reductions in damages, among other things, would significantly impact insurance costs and premium rates and recommending, among other measures, limiting pain-and-suffering damages and establishing patients' compensation fund).

*Constitutionality,* 36 BAYLOR L.REV. 265, 307 (Spring 1984); TEX.REV.CIV.STAT.ANN. § 1.02(a)(13) (Vernon Supp.2001) (adopting Keeton Commission Report's findings).

"[T]he Legislature understood that article 4590i is intended to limit liability in ways that are unique to 4590i and to be a self-contained structure for determining a health-care provider's liability and damages." *Auld,* 43 Tex.S.Ct.J. at 1160, 34 S.W.3d 887, 900–01. This intent leads us to conclude that, to harmonize the comparative liability statute with MLIIA section 11.02(a), the latter must prevail. *Auld* is instructive because it held just that, in the context of the general prejudgment interest statute and MLIIA section 11.02(a). *See id.,* 43 Tex.S.Ct.J. at 1160–61, 34 S.W.3d 887, 901. *Auld* is also instructive because it held the more specific statute (section 11.02(a), which applied only to health care liability claims) prevailed over the more general one (the general prejudgment interest statute, which applied in any wrongful death, personal injury, or property damage case). *See id.* The same logic applies here because CPRC section 33.013(b) is the more general, and MLIIA section 11.02(a) the more specific, provision governing a defendant's liability. Applying *Auld's* logic, the statutes can be harmonized to the extent that damages—including those for which a defendant could be jointly and severally liable—do not exceed the cap. *Cf. Auld,* 43 Tex. S.Ct.J. at 1160, 34 S.W.3d 887, 901.

### D. The Case Law

The Moore parties claim this issue has been resolved in their favor by three courts. We disagree. We discuss each below.

#### · 1. *Baptist Hospital of Southeast Texas, Inc. v. Baber*

In *Baptist Hospital of Southeast Texas, Inc. v. Baber,* the trial judge held a physician and hospital jointly and severally liable for about 1.65 times the single cap amount. 672 S.W.2d 296, 297 (Tex.App.— Beaumont 1984), *writ ref'd n.r.e. per curiam,* 714 S.W.2d 310 (Tex.1986). The court of appeals affirmed, holding the damages cap was unconstitutional. *Id.,* 672 S.W.2d at 298. In refusing the hospital's writ or error, the Supreme Court held the court of appeals should not have reached the constitutionality issue: "Because the judgment in this case does not exceed the combined statutory liability of both defendants, and because the hospital made no attack on the joint and several aspect of the judgment, the court of appeals need not have decided this case on constitutional grounds in order to affirm the trial court judgment."[11] *Id.,* 714 S.W.2d at 310. *Baber* shows that the plaintiff may recover an amount equal to the single cap against each culpable defendant. It does not state that the cap applicable to a single defendant can be multiplied by the number of culpable defendants. *Baber* does not support the Moore parties' argument because the hospital in *Baber* "made no attack on the joint and several aspect of the judgment." *See id.* at 310; *see also* Mark D. Clore, *Medical Malpractice Death Actions: Understanding Caps, Stowers, and Credits,* 41 S.TEX.L.REV. 467, 485–86

---

**11.** The Moore parties argue that the hospital in *Baber* implicitly raised a challenge that its joint-and-several liability did not "multiply" the cap, but we disagree. First, the Supreme Court stated the opposite. Second, the hospital did not expressly argue this until rehearing, although it could have done so before. *See, e.g., McGuire v. Federal Deposit Ins.* *Corp.,* 561 S.W.2d 213, 216 (Tex.Civ.App.— Houston [1st Dist.] 1977, no writ) (op. on reh'g) (a party generally may not raise for the first time on rehearing new matters that could have been raised earlier); *Trice Prod. Co. v. Dutton Drilling Co.,* 333 S.W.2d 607, 617 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.) (op. on reh'g) (same).

(Spring 2000) [hereinafter "Clore"] (noting the issue of whether a single defendant can be held jointly and severally liable for more than a single MLIIA cap was left open by *Baber*).

### 2. *Rose v. Doctors Hospital*

In *Rose v. Doctors Hospital*, the jury awarded damages to three of the decedent's family members, but the trial judge rendered a take-nothing judgment. *See* 735 S.W.2d 244, 245 (Tex.App.—Dallas 1987), *rev'd in part and aff'd. in part*, 801 S.W.2d 841 (Tex.1990). The court of appeals reversed and rendered judgment for all plaintiffs, applying a per-plaintiff cap and making the two defendants jointly and severally liable for all damages, which together exceeded the cap. *Id.*, 735 S.W.2d at 246, 254. In the Supreme Court, the defendants argued that (1) the cap applied to the plaintiffs' aggregate recovery, rather than on a per-plaintiff or per-defendant basis;[12] (2) alternatively, the cap should apply on a per-defendant basis; and (3) under a per-defendant rule, the two defendants should be "counted" as a single defendant. Thus, the principal issue there that is also important here was whether the MLIIA damages cap applied to the plaintiffs' aggregate recovery, instead of on a per-defendant or per-plaintiff basis.

The Supreme Court held that the cap should be applied on a per-defendant basis and thus that "the amount of damages in this case is the damages cap . . ., multiplied by two since there are two culpable defendants." *Id.*, 801 S.W.2d at 847. However, it also noted, "We do not ad-

dress the applicability of this damages calculation to the comparative negligence situation. This case does not involve a situation in which any defendant is less than completely liable." *Id.* at 847 n. 2. Thus, while *Rose* establishes a per-defendant cap and allows a plaintiff to recover an amount equal to the single cap times the number of culpable defendants, it does not increase the cap applicable to a single defendant by the number of culpable defendants. *Rose* does not support the Moore parties' argument, and it does not resolve this issue. *See Wynn v. Cohan*, 864 S.W.2d 205, 206–07 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (noting *Rose* left open the applicability of the MLIIA damages cap to a comparative negligence scenario); Clore, 41 S.Tex. L.Rev. at 485–86 (same).

### 3. *Wynn v. Cohan*

In *Wynn v. Cohan*, all but one defendant settled before trial. 864 S.W.2d at 206. The trial judge rendered summary judgment for the remaining defendant on the ground that the dollar-for-dollar settlement credit[13] that defendant had elected exceeded the MLIIA damages cap. *Id.* The court of appeals reversed, reasoning that there was not yet a finding of the percentage responsibility of all parties under CPRC section 33.003.[14] *Wynn*, 864 S.W.2d at 207–08. The *Wynn* court was not considering whether the damages cap applicable to a single defendant who is jointly and severally liable may be multiplied by the number of culpable defendants. Moreover, if it supports either

---

**12.** Under this argument, the defendants warned, "The 'per defendant' interpretation also would create significant additional problems under the doctrine of joint and several liability."

**13.** Settlement credits are calculated according to Tex.Civ.Prac. & Rem.Code Ann. § 33.012(b) (Vernon 1997). This section is

not at issue here because the doctors' settlements occurred after judgment.

**14.** Tex.Civ.Prac. & Rem.Code Ann. § 33.003 (Vernon 1997) (*requiring assessment of the percentage responsibility of each claimant, defendant, settling person, and responsible third party joined under the statute*).

party, *Wynn*'s dicta supports Columbia's position. *See id.* at 207 (rejecting defendant-appellee's argument that a comparative-responsibility jury question would nullify her election credit by multiplying her own damages cap). *Wynn* does not support the Moore parties' argument, and it does not resolve this issue. *See* Clore, 41 S.Tex.L.Rev. at 486–87.

### D. Additional Policy Considerations

We are left, then, with the MLIIA's plain language and its purpose. These lead us to conclude that the damages cap applicable to a single defendant who is jointly and severally liable may not be multiplied by the number of culpable defendants.

We agree with Columbia that the predictability of damages that the MLIIA was enacted to provide would be eroded if we allowed a defendant's joint-and-several liability to multiply its cap. We disagree with the Moore parties that we need not consider this purpose because that predictability has already been eroded by *Lucas v. United States,* which held the damages cap unconstitutional in non-death cases. 757 S.W.2d 687, 692 (Tex.1988). Just because the MLIIA's "predictability scheme" does not apply in some cases does not mean predictability should no longer be a goal in those cases in which the MLIIA still does apply. *Cf. Rose,* 801 S.W.2d at 845 ("The application of §§ 11.02 and 11.03 to wrongful death claims remains complete in itself, capable of execution in accord with the legislature's intent, and independent of any application to common law claims.").

### E. Conclusion

We hold the damages cap applicable to a single defendant who is jointly and sever-

ally liable may not be multiplied by the number of culpable defendants. Accordingly, we sustain Columbia's issue two and overrule the Moore parties' issues two and three.

### V. Disposition

We reverse that portion of the judgment awarding damages and interest against Columbia and making Columbia jointly and severally liable and remand the cause for the trial judge (1) to apply the MLIIA cap on a per-defendant basis; (2) to cap the plaintiffs' aggregate damages awarded against Columbia—excluding necessary medical, hospital, and custodial-care expenses and pre-judgment interest—at $1,305,691 (the single damages cap), regardless of Columbia's joint and several liability or the number of plaintiffs or culpable defendants; and (3) to apportion those capped damages to the plaintiffs according to the jury verdict, as was done before. Funeral expenses awarded against Columbia are to be included within the capped damages; pre-judgment interest and necessary medical, hospital, and custodial-care expenses are not.

Justice TAFT, dissenting in part.

TAFT, Justice, dissenting in part.

I agree with the majority's opinion in all respects but one: I would hold that pre-judgment interest assessed under Medical Liability and Insurance Improvement Act (MLIIA) subchapter P[1] is subject to the damages cap. Accordingly, I respectfully dissent.

I do so for the following reasons. First, had the Legislature intended for the pre-judgment interest provision of subchapter P, added in 1995, to prevail over the then 18-year-old liability limitation of subchapter K, it surely would have said so. It did not. Second, the Legislature knew how to

---

1. Tex Rev.Stat. Ann. art. 4590i, §§ 16.01 .02     (Vernon Supp.2001).

exempt categories of damages from the cap. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 11.02(b), (c) (expressly exempting expenses of necessary medical, hospital, and custodial care from damages cap and providing cap does not limit *Stowers* liability). Nonetheless, no express "exemption" for prejudgment interest appears anywhere in the MLIIA. Third, in contrast to the majority's view, I read the House Bill analysis to show that subchapter P's purpose was to bar prejudgment interest on future damages, rather to create another exception to subchapter K's damages cap. *See House Comm. on Civil Practices, Bill Analysis,* Tex. H.B. 971, 74th Leg., R.S. (1995) ("Prejudgment interest on future damages are [sic] eliminated. The substitute will bar the award of prejudgment interest on damages which have not occurred at the time of judgement. It will also allow prejudgment interest on past damages to accrue from the date of injury.").

Fourth, I believe capping prejudgment interest is consistent with *Horizon/CMS Healthcare Corp. v. Auld,* in which the appellant argued that, if the MLIIA cap included prejudgment interest, then the cap statute conflicted with the general prejudgment interest statute because both contained mandatory language. 43 Tex. S.Ct. J. at 1151, 1159–60, 34 S.W.3d 887, 890, 900–01 (Tex. Aug. 24, 2000) (designated for publication). The Supreme Court disagreed, holding that construing the cap to prevail over the general prejudgment interest statute comported with the liability-limitation scheme that was unique to article 4590i's "self-contained structure." *Id.* at 1160, 34 S.W.3d 887, 901. The Court also reasoned that the more specific statute (the MLIIA cap) should control over the more general one (the general prejudgment interest statute). *Id.* I recognize that *Auld* is distinguishable to the extent its holding was based on the MLIIA cap's being the more specific statute and

on the MLIIA's "self-contained structure." However, *Auld* shows that the MLIIA cap exists to limit liability, and it is instructive by analogy because it shows how subchapters K and P can be harmonized to effectuate that purpose "to the extent that damages—including prejudgment interest—do not exceed the cap." *See Auld,* 43 Tex. S.Ct. J. at 1160, 34 S.W.3d 887, 901.

Finally, and most importantly, I disagree that subchapter P "trumps" subchapter K when to do so would undermine the MLIIA's intended purpose. To quote the majority, "the MLIIA's purpose ... was to 'reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in the Texas insurance, tort, and medical practice systems,' thereby making health care and its liability insurance more affordable and available. Limitation of damages was considered an essential part of the goal of reducing medical malpractice premiums by the Legislature and the 'Keeton Commission,' whose findings the Legislature adopted in enacting article 4590i." *Columbia Hosp., Inc. v. Moore,* slip op. at 21 (Tex.App.—Houston [1st Dist.] Feb. 22, 2001, no pet. h.) (designated for publication) (citations and footnotes omitted); *see also* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.02(a)(1)-(11), (b)(1)-(5) (Vernon Supp.2001); *Auld,* 43 Tex. S.Ct. J. at 1153–54, 1157, 1160, 34 S.W.3d 887, 891–93, 897, 900 (repeatedly stating that the MLIIA's purpose is to limit civil liability for damages). Capping prejudgment interest—regardless of under what statute it is awarded—achieves this purpose.

Accordingly, I would hold the Moore parties may recover prejudgment interest on those damages subject to the MLIIA cap only up to the amount of the cap.