COLUMBIA HOSPITAL CORPORATION OF HOUSTON d/b/a Columbia Bellaire Medical Center, Petitioner,

v.

Jesse MOORE, et al., Respondents.

No. 01–0293.

Supreme Court of Texas.

Argued Feb. 20, 2002.

Decided June 27, 2002.

R. Brent Cooper, Diana L. Faust, Cooper & Scully, P. Michael Jung, Strasburger & Price, Dallas, Linda Joan Cole, Jackson & Walker, Alan B. Daughtry, Houston, for Petitioner.

Richard Frankel, Hackerman Peterson Frankel & Manela, Houston, for Respondents.

Justice ENOCH delivered the opinion of the Court, in which Justice HECHT, Justice OWEN, Justice JEFFERSON, and Justice RODRIGUEZ joined, and in which Justice O'Neill joined Part III only.

In this case we decide whether prejudgment interest assessed under subchapter P of the Medical Liability and Insurance Improvement Act[1] ("the Act") is subject to the Act's subchapter K damages cap.[2] Following our recent decision in *Horizon/CMS Healthcare Corporation v. Auld*,[3] we hold that subchapter P's prejudgment interest damages are subject to the statu-

tory cap. We therefore modify the court of appeals' judgment,[4] remanding this case to the trial court.

## I

Katherine Moore died after undergoing surgery at Columbia Bellaire Medical Center ("Columbia") in 1996. Her husband, two daughters, and estate (collectively "the Moores") sued the hospital and Katherine's two treating physicians under the wrongful death and survival statutes. The jury found for the Moores, allocating causal negligence between Columbia and the physicians and finding the Moores' actual damages to be $3 million. The trial court applied the Act's subchapter K damages cap to reduce Columbia's actual damages liability to $1,305,691, but added another $300,487.79 in subchapter P prejudgment interest to the capped amount. The two physicians settled after judgment. Although the trial judge's application of the damages cap gave rise to other disputes resolved by the court of appeals, the only issue before us is whether the trial court erred in excluding prejudgment interest from the damages cap.

The subchapter K damages cap, found at article 4590i, section 11.02(a) of the Revised Civil Statutes, provides:

> In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000.[5]

The cap is adjusted to account for inflation when applied,[6] and neither party disputes

1. Tex.Rev.Civ. Stat. art. 4590i, §§ 16.01–16.02.

2. *See id.* §§ 11.01–11.05.

3. 34 S.W.3d 887, 897–901 (Tex.2000).

4. 43 S.W.3d 553, 566.

5. Tex.Rev.Civ. Stat. art. 4590i, § 11.02(a).

6. *See id.* § 11.04.

that the cap was properly adjusted and applied to reach the $1,305,691 awarded by the trial court here.

Subchapter K was a centerpiece of the original Medical Liability and Insurance Improvement Act passed in 1977 in order to "reduce excessive frequency and severity of health care liability claims." [7] In 1995, the Legislature added subchapter P to the Act, providing for a particular "[c]omputation of [p]rejudgment [i]nterest" in health care liability claims.[8] The relevant portion of this provision, section 16.02(b), dictates that in such claims "the judgment must include prejudgment interest on past damages found by the trier of fact, but shall not include prejudgment interest on future damages found by the trier of fact." [9] Subchapter P explicitly states that its computation applies "[n]otwithstanding" the general prejudgment interest statute,[10] but makes no mention of subchapter K's damages cap.

The Moores argue, and the court of appeals held,[11] that the Legislature's addition of subchapter P's prejudgment interest provisions to the Act evidenced an intent to exclude prejudgment interest from the damages cap prescribed by subchapter K, and that section 16.02(b)'s mandatory language must be given effect by adding prejudgment interest, when appli-

cable, to the capped damages amount. We disagree.

## II

We recently addressed a strikingly similar question in *Horizon/CMS Healthcare Corporation v. Auld.*[12] In *Auld* we were asked to reconcile the Act's damages cap with the former general prejudgment interest statute directing that "judgments in wrongful death, personal injury, or property damage cases must include prejudgment interest." [13] Like section 16.02(b), this provision was mandatory; like subchapter P, the statute did not reference the Act's damages cap. But we held in *Auld* that prejudgment interest required by the general statute was subject to the Act's subchapter K damages cap.[14]

At the heart of our analysis was the recognition that prejudgment interest was a form of damages that the Legislature intended to include in the Act's cap.[15] We emphasized that the Act was designed "to limit, not expand, a health-care provider's civil liability for damages," [16] and including prejudgment interest in the cap was consistent with the Legislature's expressed purposes of decreasing the cost of health care claims and ensuring the availability of reasonably affordable insurance.[17] We further noted that the statutory provisions could be harmonized to the extent that prejudgment interest would be recovered up to the cap

---

7.  *Id.* § 1.02(b)(1).

8.  *Id.* § 16.02 (section heading).

9.  *Id.* § 16.02(b).

10.  *Id.* § 16.01.

11.  43 S.W.3d at 562.

12.  34 S.W.3d at 897–901.

13.  *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 Tex. Gen. Laws 51, 51, *re-*

*pealed by* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (now codified at Tex. Fin.Code § 304.102).

14.  *See Auld,* 34 S.W.3d at 901.

15.  *See id.* at 897–99.

16.  *Id.* at 900 (quote omitted).

17.  *See id.; see also* Tex.Rev.Civ. Stat. art. 4590i, §§ 1.02(b)(2), (b)(4).

amount.[18]   And because subchapter K's damages cap had a more specific application than the general prejudgment interest statute, including prejudgment interest in the cap was consistent with the statutory construction principle that the more specific statute controls over the more general one.[19]

The court of appeals distinguished *Auld,* relying on the dissenting opinion in that case,[20] and suggested that the addition of subchapter P to the Act indicated a legislative intent to exclude prejudgment interest damages from subchapter K's cap.[21]   We disagree.   Although the court of appeals correctly noted that the Act's prejudgment interest provision is no more general than its damages cap, making that portion of *Auld*'s statutory construction analysis inapplicable,[22] the heart of *Auld*'s analysis continues to apply, and compels the result we reach today.

First, the addition of subchapter P to the Act did nothing to change the nature of the prejudgment interest awarded. Prejudgment interest was, and continues to be, "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment."[23]   These additional compensatory damages, we held in *Auld,* are among the damages that the Legislature intended to include in a defendant's "limit of civil liability for damages."[24]   Under *Auld* subchapter K capped, and continues to cap, damages of the kind subchapter P awards.

Second, *Auld*'s emphasis on the legislative intent to limit, not expand, a healthcare provider's liability under the Act remains relevant.   As its legislative history makes clear, subchapter P was designed primarily to foreclose a particular, previously available prejudgment interest application.[25]   Under the general statute—and under *Auld,* subject to the cap—plaintiffs received prejudgment interest on costs that had not accrued before the date of judgment.[26]   But under subchapter P, plaintiffs can no longer recover prejudgment interest on future damages awarded in health care liability claims.[27]   The House Committee Report for the bill containing subchapter P described "[p]rejudgment interest on costs accruing after the date of judgement [sic]" as a background problem justifying the bill, which "reforms limits on health care liability claims."[28]   Thus subchapter P was enacted for the same purpose as subchapter K and the Act

---

18.   *See Auld,* 34 S.W.3d at 901.

19.   *See id.* (citing *Lufkin v. City of Galveston,* 63 Tex. 437, 439 (1885)).

20.   *See* 43 S.W.3d at 561–62 (citing *Auld,* 34 S.W.3d at 908–09 (Hankinson, J., dissenting)).

21.   *See id.*

22.   *See id.* at 562.

23.   *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex.1985); *see also Johnson & Higgins, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 528 (Tex.1998).

24.   *See Auld,* 34 S.W.3d at 897–901; Tex.Rev. Civ. Stat. art. 4590i, § 11.02(a).

25.   *See, e.g.,* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995); Sen. Comm. on Economic Development, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995).

26.   *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 Tex. Gen. Laws 51, 51, *repealed by* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (now codified at Tex. Fin.Code § 304.102).

27.   Tex.Rev.Civ. Stat. art. 4590i, § 16.02(b).

28.   House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995).

itself—to limit, not expand, a health-care provider's liability—and both provisions should be read in a manner that will advance this overarching goal. In *Auld* we held that capping prejudgment interest awarded under the general statute advanced the purposes of the Act;[29] capping prejudgment interest awarded under subchapter P advances the purposes of subchapter P and the Act as a whole.

Third, as we explained in *Auld,* the damages cap is not irreconcilable with a statutory prejudgment interest requirement.[30] Here, subchapter P describes how prejudgment interest must be computed in a health care liability claim judgment;[31] subchapter K dictates when that judgment, with its attendant computations, must be capped.[32] We should not be surprised to find the subchapter K damages cap in some tension with the larger statutory and common-law compensatory structure, for it is designed to override otherwise applicable damages computation standards. But this does not make the cap irreconcilable with damages allocation requirements; subchapter K merely adds an implicit qualification to the otherwise applicable standards: they now apply subject to the cap.

### III

◼ Finally, we consider *Auld*'s precedential effect. Because this Court has already decided that the Legislature meant to include prejudgment interest awarded under the general statute in subchapter K's cap, the question before us today turns on whether the Legislature intended sub-chapter P to uncap this previously capped prejudgment interest. But the statutory provision itself allows no such inference, and its legislative history reveals that the predominating concern was to limit, not expand, the application of prejudgment interest.[33] Although the *Auld* dissent argued that prejudgment interest was not subject to subchapter K's damages cap, it also concluded that subchapter P's structure "suggests that the Legislature did not intend to uncap previously capped prejudgment interest."[34] Because nothing in subchapter P indicates that the Legislature intended to uncap damages that this Court has held capped under subchapter K, *Auld* must control, and subchapter P's prejudgment interest damages remain capped.

### IV

◼ In sum, prejudgment interest awarded under subchapter P remains a form of the compensatory damages capped by subchapter K, and capping prejudgment interest advances the Act's goals. Further, subchapter P does not exclude prejudgment interest from a cap designed to override otherwise applicable damages computations, and nothing in subchapter P indicates a legislative intent to uncap previously capped damages. For these reasons, we hold that prejudgment interest awarded under subchapter P of the Medical Liability and Insurance Improvement Act is subject to the Act's subchapter K damages cap. Subchapter P prejudgment interest on past damages excluded from the cap by section 11.02(b) is fully avail-

---

**29.** *See Auld,* 34 S.W.3d at 898–900.

**30.** *See id.* at 901.

**31.** *See* Tex.Rev.Civ. Stat. art. 4590i, §§ 16.01–16.02.

**32.** *See id.* §§ 11.01–11.05.

**33.** *See, e.g.,* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995).

**34.** *See Auld,* 34 S.W.3d at 908 (Hankinson, J., dissenting).

able, but prejudgment interest on damages subject to the cap may be awarded only up to subchapter K's cap amount. We therefore modify the court of appeals' judgment and remand this case to the trial court for further proceedings consistent with our opinion.

Chief Justice PHILLIPS filed a dissenting opinion, in which Justice BAKER and Justice HANKINSON joined.

Chief Justice PHILLIPS filed a dissenting opinion in which Justice BAKER and Justice HANKINSON joined.

In 1977, the Legislature enacted the Medical Liability and Insurance Improvement Act, capping medical malpractice damages. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 11.02(a) (subch. K) (Supp.2002). At the time, the common law did not provide for prejudgment interest on such claims. Eight years later, the common law changed. In *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985), this Court overruled eighty-eight years of precedent, recognizing for the first time that prejudgment interest should be paid in personal injury, wrongful death, and survival actions. Two years after *Cavnar*, the Legislature codified its own prejudgment interest rule for tort actions in article 5069–1.05, section 6(a) of the Revised Civil Statutes, providing that "[j]udgments in wrongful death, personal injury, and property damage cases must include prejudgment interest." Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 Tex. Gen. Laws 51, 51 *repealed by* Act of May 24, 1997, 75th Leg., R.S., Ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (current version at TEX. FIN. CODE § 304.102).

In 1995, the Legislature added subchapter P to the Medical Liability and Insur-

ance Improvement Act, including for the first time a prejudgment interest mandate specifically for health-care liability claims. Subchapter P provides that the judgment in any health care liability claim "must include prejudgment interest on past damages found by the trier of fact" if such claim is not settled within six months of notice. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 16.02(b) (Supp.2002).

From this brief history, I draw two conclusions. First, when the Legislature enacted the liability cap (subchapter K) in 1977, it did not specifically intend to limit prejudgment interest because it was not available. Second, when the Legislature added subchapter P in 1995, it intended that prejudgment interest be included in judgments covered by the Act. Today, however, the Court reads subchapter P out of the Act for those claimants whose past damages exceed the cap. Because the Act plainly requires the award of prejudgment interest on past damages and nothing in the Act's text or history suggests that the cap was intended to bar its award, I respectfully dissent.

The Court bases today's result on *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887 (Tex.2000). In *Auld*, we held that prejudgment interest, payable under the interest statute enacted after *Cavnar*, could be recovered "on damages subject to the cap only up to the amount of the cap." *Id.* at 901. In other words, prejudgment interest on capped damages cannot be added to cause the judgment to exceed the statutory cap. Although the Legislature did not have prejudgment interest specifically in mind when it created the cap, the Court reasoned that it did intend to cap all common law damages except those it expressly excluded. *Id.* at 898. Thus, when *Cavnar* extended prejudgment interest to personal injury and death cases, such interest came under the cap because pre-

judgment interest is a part of common law damages. *Id.*

The Court recognized, however, that the Legislature's subsequent codification of its own prejudgment interest statute created a potential conflict with the cap on medical malpractice damages because the prejudgment interest statute mandated the award of prejudgment interest while the cap prevented its recovery in some cases. *Compare* TEX.REV.CIV. STAT. ANN. art. 5069–1.05, § 6(a) ("A judgment in a wrongful death, personal injury, or property damages case must include prejudgment interest.") *with id.* art. 4590i, § 11.02(a) (directing that a defendant's civil liability for damages be limited to a statutorily-determined amount). The Court reconciled the conflict in favor of the cap, relying on a maxim of statutory construction, and the Legislature's perceived purpose for capping health-care liability damages. Applying the statutory construction principle that the more specific statute controls over the more general, the Court wrote:

> With regard to the cap in article 4590i, section 11.02 and the general prejudgment-interest statute in article 5069–1.05, the former is the more specific statute in that it applies only to health-care liability claims, while the latter is more general because it applies to broader categories of claims, including all types of personal injury, property damage, and wrongful death. Thus, the cap in article 4590i prevails over the general prejudgment-interest statute.

*Auld,* 34 S.W.3d at 901. Regarding the legislation's purpose, the Court explained that the Legislature intended the Act to be a "self-contained structure for determining a health-care provider's liability and damages" whose purpose was "to limit, not expand" such liability and that permitting statutory prejudgment interest to exceed the liability cap would produce "a result

inconsistent with legislative intent." *Id.* at 900–01. Because the health-care liability claim predated subchapter P, the Court expressly reserved the issue before us today—whether the cap also limits an award *of* prejudgment interest under subchapter P, the Act's self-contained, prejudgment interest provision. *Id.* at 900 n. 13.

Relying on *Auld,* the Court now holds that the cap also limits subchapter P prejudgment interest. But Using *Auld's* statutory construction rule yields a different result when the cap is compared to the Act's self-contained, prejudgment interest provision. No longer are we comparing the medical malpractice cap with a prejudgment interest statute generally applicable to tort damages. Here, subchapter P is the more specific provision because it expressly mandates the recovery of prejudgment interest in successful health-care liability cases, evidencing an explicit intent to exclude prejudgment interest from the more general application of the cap. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 16.02 (Supp.2002). Yet another rule of statutory construction provides that when two statutes conflict, the later-enacted provision controls. *See* TEX. GOV'T CODE § 311.025. This rule likewise supports recovery of prejudgment interest in this case because subchapter P is not only the more specific provision, but also the later enacted one.

Two years ago in *Auld,* the Court described the Act as a "self-contained structure for determining a health-care provider's liability and damages." *Auld,* 34 S.W.3d at 901. Today, the Court interprets the Act not by well-settled rules of statutory construction, but by deference to the Act's "overarching goal" of limiting health care liability. 92 S.W.3d at 474.

The Legislature, however, was not motivated solely by a desire to limit health care liability for its own sake. The Legislature perceived a crisis in the affordability of

medical professional insurance, which would inevitably impact the availability of medical care. *See Auld,* 34 S.W.3d at 893. To increase the "availability of medical care for Texans," the Legislature sought to make health care liability damages more predictable so that medical professional insurance would be available at affordable rates. *Id.*

Mandating the award of prejudgment interest on past damages, as the Legislature has done under subchapter P, does not undermine that goal. Prejudgment interest is subject to precise calculation, and thus the maximum amount of additional exposure may readily be anticipated by insurance carriers. *See Auld,* 34 S.W.3d at 909 (Hankinson, J. concurring and dissenting).

Had the Legislature intended to limit the award of prejudgment interest under subchapter K's cap, it would have referred to that subchapter when it added subchapter P in 1995. Furthermore, had the Legislature intended for prejudgment interest to be awarded in some health-care liability cases but not others, it would not have chosen the mandatory language it did for subchapter P. Given the self-contained structure of the Act, it seems extremely unlikely to me that the Legislature would have both ignored subchapter K and used mandatory language in subchapter P had it not intended to exempt prejudgment interest on past damages from the liability cap. Because the Court concludes otherwise, I dissent.