IN THE SUPREME COURT OF TEXAS

════════════
No. 02-0946
════════════

Southwest Bank, Petitioner

v.

Information Support Concepts, Inc., Respondent

════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of Texas
════════════════════════════════════════════════════


Argued November 5, 2003

 
            Chief Justice Jefferson delivered the opinion of the Court.

            In this case, we must determine whether Chapter 33 of the Texas Civil Practice and Remedies
Code applies to a conversion action brought under Texas Business and Commerce Code section
3.420. The trial court granted Information Support Concept’s summary judgment motion, which
asserted that Southwest Bank was liable for conversion and could not join a responsible third party
to the action, and the court of appeals affirmed. Because we agree that Chapter 33 does not govern
a UCC-based conversion claim, we affirm the court of appeals’ judgment. 
I
Background

            An Information Support Concepts (“ISC”) employee, Kelly Rasco, stole multiple checks,
payable to ISC, over an eighteen-month period. She then deposited the checks – approximately 183
of them, totaling more than $300,000 – into her personal account at Southwest Bank. Although ISC
did not have an account with Southwest Bank, and the checks did not bear an ISC endorsement or
signature,


 Southwest Bank nevertheless accepted the deposits for Rasco’s personal account and
secured payment on those checks. 
            Pursuant to Texas Business and Commerce Code section 3.420, ISC brought a conversion
action against Southwest Bank. Southwest Bank answered and sought leave to join Rasco, her
husband, and ISC’s chief financial officer as responsible third parties pursuant to Texas Civil
Practice and Remedies Code Chapter 33. The trial court denied Southwest Bank’s motion on the
ground that the bank was not entitled to apportion responsibility. ISC then moved for summary
judgment on liability for conversion and actual damages. The trial court granted ISC’s motion and
entered a final judgment against Southwest Bank for actual damages ($328,252) plus prejudgment
interest ($38,291.20).



            Southwest Bank appealed, complaining that the trial court erred by refusing to allow joinder
of Rasco as a responsible third party. 85 S.W.3d 462, 464. While Southwest Bank did not deny that
it converted the checks stolen by Rasco, it contended that Rasco shared responsibility for the
conversion and should be held proportionately liable. Id. at 466. The court of appeals rejected
Southwest Bank’s arguments and affirmed the trial court’s judgment. Id. at 463. The court of
appeals noted that under the Uniform Commercial Code (“UCC”), it was the depositary bank’s
obligation to verify an endorsement. Id. at 465. The court held that when two statutes conflict,
courts must give effect to the specific (here, the UCC) over the general (Chapter 33). Id. at 467
(citing Tex. Gov’t Code § 311.026). Additionally, the court noted that recent UCC amendments
demonstrated a discrete legislative fault scheme uniquely applicable to banks. Id. Thus, the court
of appeals concluded “that the proportionate responsibility statute set forth in chapter 33 of the civil
practice and remedies code does not apply to a UCC section 3.420 claim for conversion.” Id. at 468.
            Southwest Bank presents a single issue for our review: whether a bank, facing a conversion
claim resulting from the theft of an employer’s checks by an employee who deposited those checks
in the bank, is entitled to join the thief as a responsible third party in the conversion action.
II
A
UCC Revised Article 3 
            In an effort to accommodate modern technologies and practices in payment systems and with
respect to negotiable instruments, the American Law Institute (“ALI”) and the National Conference
of Commissioners on Uniform State Laws (the “Commissioners”) drafted a revised version of UCC
Article 3 (“Revised Article 3"), with corresponding amendments to Articles 1 and 4. See Uniform
Commercial Code, 2004 Official Text and Comments, prefatory note to Revised Article 3. In
1990, the ALI and the Commissioners approved the new text of Revised Article 3 with
miscellaneous and conforming amendments to Articles 1 and 4. 4 William D. Hawkland & Lary
Lawrence, Uniform Commercial Code Series § 3-101:1 (1999). The American Bar Association
approved the Official Text in 1991. Daryl B. Robertson, Report of the Commercial Code Committee
of the Section of Business Law of the State Bar of Texas on Revised UCC Articles 3 and 4, 47
Baylor L. Rev. 425, 429 (1995). 
            The Business Law Section of the State Bar of Texas formed a Commercial Code Committee
in 1988 for the purpose of studying and making recommendations with respect to new and revised
Articles to the UCC. Id. at 428. Over the course of several years and numerous meetings, that
committee analyzed Revised Articles 3 and 4, with the goal of making a recommendation to the
Legislature in conjunction with the 1995 Texas legislative session. Id. at 430. The committee
recommendation included a complete deletion of existing Chapter


 3 and adoption of a new revised
Chapter 3; revisions of selected sections in Chapter 4; and conforming amendments to Chapters 1
and 9 of the Business and Commerce Code. Id. at 433. Representative Grusendorf introduced as
House Bill 1728 the committee’s recommended revisions to Chapters 3 and 4. Tex. H.B. 1728, 74th
Leg., R.S. (1995), 1995 Tex. Gen. Laws 4582. The bill, with some amendments, was passed by the
House and Senate, signed by the Governor, and became effective January 1, 1996. Act of May 29,
1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex. Gen. Laws 4582. 
            Revised Article 3 included UCC section 3-420, adopted verbatim by the Texas Legislature. 
See Tex. Bus. & Com. Code § 3.420. That section, entitled “Conversion of Instrument,” provides
that “[a]n instrument is . . . converted if it is taken by transfer, other than a negotiation, from a person
not entitled to enforce the instrument or a bank makes or obtains payment with respect to the
instrument for a person not entitled to enforce the instrument or receive payment.” Id. § 3.420(a). 
Section 3.420 limits a plaintiff’s recovery to the amount of the plaintiff’s interest in the instrument. 
Id. § 3.420(b). Section 3.420, like its predecessor section 3.419, reflects the rationale that the first
bank in the collection chain is usually in the best position to ensure that endorsements are authentic. 
See Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984). 
B
Responsible Third Parties 

            In the same legislative session that it adopted Revised Article 3, the Legislature amended the
Civil Practice and Remedies Code, permitting joinder of responsible third parties


 in certain cases
and providing for the inclusion of a responsible third party in the jury’s determination of percentages
of responsibility. See Tex. Civ. Prac. & Rem. Code §§ 33.003, 33.004, 33.011.


 By its terms,
Chapter 33 applies to “any cause of action based on tort


 in which a defendant, settling person, or
responsible third party is found responsible for a percentage of the harm for which relief is sought,”
but does not apply to actions to collect workers’ compensation benefits or certain claims for
exemplary damages.


 Id. § 33.002(a), (c). Chapter 33 does not explicitly address its applicability
in UCC cases.
III
Statutory Analysis
  
            We must decide then whether, in a UCC-based conversion action, a defendant may join a
responsible third party as set forth in the Civil Practice and Remedies Code. The UCC contains a
comprehensive and carefully considered allocation of responsibility among parties to banking
relationships. For example, a bank that mistakenly pays a thief who presents a stolen check may sue
that thief for breach of the transfer warranty. See Tex. Bus. & Com. Code § 3.416; see also 6
William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series § 3-416:2 (1999)
(noting that “a thief gives the transferor’s warranties when he transfers the instrument even though
he has no right to possess the instrument”). Moreover, Revised Article 3 now includes its own
comparative negligence provisions that apply to some, but not all, conversion claims. See, e.g., Tex.
Bus. & Com. Code §§ 3.405, 3.406, 4.406; see also id. § 3.406 cmt. 4 (“Subsection (b) differs from
former Section 3-406 in that it adopts a concept of comparative negligence.”). If a thief steals a
check made payable to his or her employer and forges an indorsement, the employer’s negligence,
if any, may bar its claim against the payor bank. See, e.g., 6 Hawkland and Lawrence, Uniform
Commercial Code Series § 3-420:6 (“When a payee (or indorsee) whose indorsement has been
forged sues the payor for conversion, the payor may defend the action by proving that the payee’s
negligence substantially contributed to the making of the forged indorsement. Upon such proof, the
payee is precluded under Section 3-406 from asserting the forgery. When the payee brings an action
for conversion against a depositary bank, the payee’s negligence is also available as a defense. In
both of these cases, the failure of the payor or depositary bank to exercise ordinary care in paying
or taking the instrument will result in allocating of the loss between the bank and the payee to the
extent to which each party’s failure contributed to the loss.”). 
            Thus, for example, under section 3.405, an employer who entrusts an employee with
“responsibility”


 with respect to an instrument may be barred from recovery against the bank. Tex.
Bus. & Com. Code § 3.405. This section is “based on the belief that the employer is in a far better
position to avoid the loss by care in choosing employees, in supervising them, and in adopting other
measures to prevent forged indorsements on instruments payable to the employer or fraud in the
issuance of instruments in the name of the employer.” Id. cmt. 1.
            These provisions evince a shift away from strict liability for banks that convert checks to a
fault-based system.


 As White and Summers have noted:
Subsection 3-406(b) is an invitation for a plaintiff to roll the dice with the
jury. . . . 
 
. . . .
 
The arguments about what constitutes negligent behavior and what does not
will likely be little changed by [Revised Article 3]. What has changed are the
consequences of proving that the bank was negligent. Under the old Code, proof that
the bank was negligent generally meant that the entire loss fell on the bank, not the
depositor, regardless of the depositor’s negligence. Now, the depositor will seldom
be able to cast the entire loss on the bank; the loss will be shared. 
James J. White & Robert S. Summers, Uniform Commercial Code § 19-3 (4th ed. 1995). The
loss allocation provisions essentially “make an initial identification of the party upon whom loss
generally should be imposed, based upon the particular type of factual circumstances, but then allow
that party to shift at least part of that loss to other parties who contributed to that loss by their failure
to exercise ordinary care.” Donald J. Rapson, Loss Allocation in Forgery and Fraud Cases:
Significant Changes Under Revised Articles 3 and 4, 42 Ala. L. Rev. 435, 473 (1991). 
            Applying Chapter 33's proportionate responsibility framework to claims involving Revised
Article 3, therefore, could disrupt the UCC’s carefully allocated liability scheme. Amici


 urge that,
in those situations in which the UCC’s comparative negligence provisions do not apply, Chapter 33
should. That is, they assert that Revised Article 3 provides its own comparative negligence scheme
in the case of forged endorsements but is silent on missing endorsements, such as the one in this
case. Accordingly, amici contend that chapter 33 is uniquely applicable to missing endorsement
cases. If that were the case, however, the thief’s liability would be submitted to the jury in a missing
endorsement case but not in a forged endorsement case. Certainly, a bank should bear more
culpability in the former situation than the latter, but under the result proposed by amici, the opposite
would be true. A bank that paid a check bearing absolutely no endorsement could escape liability
if the jury determined the thief was at fault, while a bank that paid on a forged but seemingly genuine
endorsement would not be able to submit the thief’s liability to the jury. A more reasonable
construction is that the Texas Legislature and the UCC drafters considered and rejected comparative
fault in missing endorsement cases, but elected to permit it in forged endorsement ones. See Tex.
Gov’t Code § 311.021(3) (“In enacting a statute, it is presumed that . . . a just and reasonable result
is intended . . . .”). We should not disturb that decision by applying Chapter 33 to those UCC-based
conversion claims for which the drafters and the Legislature chose not to apportion responsibility. 
This accords with our mandate to construe the UCC as “carefully integrated and intended as a
uniform codification of permanent character covering an entire ‘field’ of law.” Tex. Bus. & Com.
Code § 1.104 cmt. 1.
            Although there are no Texas cases directly addressing whether Chapter 33 governs a UCC-based conversion claim, the Sixth Circuit Court of Appeals recently considered whether to apply
Michigan’s Tort Reform Act, Michigan Compiled Laws section 600.2957(1), to such a claim. See
John Hancock Fin. Servs., Inc. v. Old Kent Bank, 346 F.3d 727, 731 (6th Cir. 2003). In that case,
John Hancock Financial Services sued Old Kent Bank to recover check proceeds converted by Old
Kent and paid to one of John Hancock’s agents, Patrick Sherman. Id. at 729. The court examined
UCC section 3-406's comparative fault scheme and noted that it involved allocating the loss between
two negligent – but innocent – parties. That is, the UCC comparative fault principles did not involve
allocating liability to the thief. The court concluded that “[t]he fact that UCC § 3-406 does not
allocate fault to the wrongdoer – as opposed to the negligent parties – is significant in determining
whether Michigan’s Tort Reform Act applies in this case.” 346 F.3d at 732. The court noted that
the Michigan Tort Reform Act required the trier of fact to assess “the fault of each person, regardless
of whether the person is, or could have been, named as a party to the action.” Id. (quoting Mich.
Comp. Laws § 600.2957(1)). The court concluded that the tension between the two statutes “must
be resolved in favor of not applying Michigan’s Tort Reform Act to UCC conversion actions. 
Because the UCC more specifically relates to the allocation of fault with respect to the conversion
of instruments than does the Tort Reform Act, the UCC controls.” Id. 
            The Sixth Circuit’s interpretation echoes an earlier decision from the Court of Appeals of
New York, the highest court in that state. See Putnam Rolling Ladder Co. v. Manufs. Hanover Trust
Co., 546 N.E.2d 904, 908 (N.Y. 1989). Although Putnam involved former Article 3, its reasoning
is instructive. Emphasizing the need for certainty in commercial transactions, the court refused to
apply that state’s comparative negligence provisions to UCC sections 3-406 and 4-406 (governing
liability for forged instruments):
[T]he UCC serves an important objective not shared by the law of torts. Unlike tort
law, the UCC has the objective of promoting certainty and predictability in
commercial transactions. By prospectively establishing rules of liability that are
generally based not on actual fault but on allocating responsibility to the party best
able to prevent the loss by the exercise of care, the UCC not only guides commercial
behavior but also increases certainty in the marketplace and efficiency in dispute
resolution. These ends would not be furthered by the introduction of the sort of fact
inquiries necessitated by comparative negligence.

Id. (citation omitted); see also Fed. Ins. Co. v. NCNB Nat’l Bank, 958 F.2d 1544, 1551-52 (11th Cir.
1992) (concluding that state comparative negligence principles were inapplicable under the UCC);
Govoni & Sons Constr. Co. v. Mechanics Bank, 742 N.E.2d 1094, 1105-06 (Mass. App. Ct. 2001)
(holding that the UCC displaced the provisions of the Massachusetts comparative negligence statute,
and refusing to apply that statute to a UCC-based claim for wrongful debit).
            In this case, the Texas Legislature adopted Revised Article 3 in the same session in which
it amended Chapter 33. As in John Hancock, there is a tension between these two statutes. It is
unreasonable to assume that the Legislature intended to adopt the UCC’s comprehensive liability
scheme while simultaneously undoing that framework by mandating the application of Chapter 33
to UCC-based conversion claims.
            We recently decided F.F.P. Operating Partners v. Duenez, __ S.W.3d __, __ (Tex. 2004),
in which we reaffirmed that Chapter 33 applied to a cause of action arising under the Dram Shop
Act, Texas Alcoholic Beverage Code Chapter 2. We noted that "[i]t is clear from Chapter 33's
language that the Legislature intended all causes of action based on tort, unless expressly excluded,
to be subject to apportionment." Duenez, __ S.W.3d at __. We also noted, however, that "the nature
of the liability that the Dram Shop Act imposes on a provider does not render the proportionate
responsibility statute meaningless, nor does Chapter 33's application undermine the Dram Shop Act's
effect."
            That is not the situation here. In this case, we are faced with a conflict between a uniform
code adopted by the Texas Legislature and Chapter 33. As outlined above, applying Chapter 33 to
a UCC-based conversion claim would "undermine the [UCC’s] effect." Id. at __. While we cannot
say that the UCC’s comparative negligence scheme renders the proportionate responsibility statute
meaningless, we cannot reconcile the two without doing violence to the UCC.
            The UCC, a uniform code, must be “liberally construed and applied to promote its underlying
purposes and policies.” Tex. Bus. & Com. Code § 1.103(a). Those underlying purposes and
policies are: “(1) to simplify, clarify and modernize the law governing commercial transactions; (2)
to permit the continued expansion of commercial practices through custom, usage and agreement
of the parties; and (3) to make uniform the law among the various jurisdictions.” Id. § 1.103(a)
(emphasis added); see also Tex. Gov’t Code § 311.028 (“A uniform act included in a code shall
be construed to effect its general purpose to make uniform the law of those states that enact it.”). 
At the time Texas adopted Revised Article 3, thirty-three states had adopted it; today, it is the law
in forty-eight states, the District of Columbia, and the Virgin Islands. Uniform Commercial Code
Prec. § 3-101, 2 U.L.A. 4-6 (Supp. 2004); Daryl B. Robertson, Report of the Commercial Code
Committee of the Section of Business Law of the State Bar of Texas on Revised UCC Articles 3 and
4, 47 Baylor L. Rev. 425, 431 (1995). Were we to impose Texas’s proportionate responsibility
scheme on Revised Article 3, parties litigating UCC-based conversion claims in Texas would face
a unique liability scheme, overriding the UCC’s express purpose of furthering uniformity among the
states.
            Additionally, the UCC is “carefully integrated and intended as a uniform codification of
permanent character covering an entire ‘field’ of law, [and] is to be regarded as particularly resistant
to implied repeal.” Tex. Bus. & Com. Code § 1.104 cmt. 1; see also Lary Lawrence,
Lawrence’s Anderson on the Uniform Commercial Code § 1-104:3 (3d ed. 2003) (“In view
of the considered and deliberate manner of preparing and adopting the UCC, it is obvious that a
repeal of any of its provisions is not to be lightly assumed to have been intended by the legislature.”). 
Given this express goal, we must be careful not to interpret any statute that does not explicitly amend
or modify the UCC as doing so impliedly. By adhering to this discipline, we preserve the UCC’s
purposes and policies. See Tex. Bus. & Com. Code § 1.103(a). 
            Finally, Revised Article 3 is more specific than Chapter 33. See Columbia Hosp. Corp. v.
Moore, 92 S.W.3d 470, 473 (Tex. 2002). Revised Article 3 contains its own loss allocation scheme
uniquely applicable to conversion claims involving negotiable instruments. That scheme includes
proportionate responsibility principles and specific causes of action against the thief and the
depositary bank, as contrasted with Chapter 33's general proportionate responsibility scheme. 
Accordingly, Revised Article 3's terms govern. 
IV
Conclusion

            UCC Revised Article 3, as adopted in Texas, represents a comprehensive legislative fault
scheme singularly applicable to claims involving negotiable instruments. Its provisions are more
specific than Chapter 33, and they were adopted by the same Legislature that amended Chapter 33
to provide for responsible third party liability. We conclude that the Legislature did not intend to
upset the UCC’s carefully balanced liability provisions by applying Chapter 33 to a UCC-based
conversion claim. To hold otherwise would ignore the UCC itself and thwart its underlying purpose. 
Accordingly, we affirm the court of appeals’ judgment. In light of our holding, we do not reach
ISC’s conditional cross-petition regarding the availability of exemplary damages if Chapter 33
applies to its conversion claim. 
______________________________Wallace B. Jefferson 
 Chief Justice 
 
OPINION DELIVERED:    October 22, 2004